Commonwealth v. Schaffer.

---

# MAYOR'S COURT OF PHILADELPHIA.

## APRIL SESSION, 1797.

---

### COMMONWEALTH *v.* SCHAFFER.

#### *Criminal jurisdiction.*

The jurisdiction of the state courts extends to the case of a forgery of powers of attorney, to receive warrants for lands granted by acts of congress, for military services.

THE defendant was indicted and convicted for forging the names of several soldiers to powers of attorney, authorizing him to demand and receive their warrants for the donation of lands granted by acts of congress, for services during the revolutionary war. *Dallas* observed, that as the question of the common-law jurisdiction of the federal courts, in criminal cases, had not been decided, it was his duty, as counsel for the defendant (without declaring his own opinion), to bring it before the court, on the present occasion. He, therefore, moved in arrest of judgment, that the offence, charged in the indictment, arises under a law or laws of the United States; and is exclusively cognisable in their courts.

After argument, the Recorder stated the facts, authorities and principles of the case, in giving the judgment of the court.

WILCOCKS, Recorder.—The offences charged against the defendant in the indictment, are forgeries, committed in forging the names of Allen Fox, Ebenezer Drake, Robert Battersby and Samuel Griswald, to four several

Commonwealth v. Schaffer.

powers of attorney, to demand and receive from the United States, for each of them, 100 acres of. land ; they having all been soldiers, who enlisted to serve during the late war with Great Britain, and who served through the war ; and in consequence, under various acts of congress, each of them was entitled to a donation of 100 acres of land.

In support of this motion in arrest of judgment, made by Mr. Dallas, the constitution of the United States has been cited ; Art. III., § 2, p. 12 ; \*xxvii.] the Judiciary Act of Congress, § 9, p. 97; § 11, p. 98, 99 ; § 34, p. 112; 2 vol. Resolves of Congress, 16th \*Sept. 1776, p. 357-8; p. 361; 18th Sept. 1776, p. 365; 20th Sept. 1776, p. 456; 12th Nov. 1776, p. 438; 30th Oct. 1776; Laws of U. S. p. 151, § 14; Const. U. S., art. I. § 8; 1 Black. Com. 245. It has been contended, that, under the 2d section of the 3d article of the constitution of the United States, its judicial power extends, *inter alia*, to all cases arising under the constitution and laws of the United states.

By the resolutions of Congress, in 1776, referred to, it was shown, that the soldiers, who enlisted to serve during the war, and served to the end of it, were, individually, entitled to a donation of 100 acres of land from congress. It has been said, that an inspection of the indictment will show, that the crimes charged against the defendant, consisted in forging certain writings, which, by the rules of office, were necessary to obtain from congress the soldier's right to lands. For this reason, and because the soldier's rights to lands are derived under the resolves or acts of congress, the conclusion is drawn, that a state court has no cognisance of this crime, because it arises out of a law of the United States. The 9th section of the judiciary law of the United States, it is alleged, gives to the district court, exclusive of the state courts, cognisance of all crimes and offences that shall be cognisable under .the authority of the United States, where the punishment is whipping under thirty stripes, &c. And § 11, p. 99, gives to the circuit court exclusive cognisance of all crimes and offences cognisable under the authority of the United States, except where that act otherwise provides, or the laws of the United States otherwise direct.

It was contended, that, for the reasons before recited, showing that the offence arose out of a law of the United States, that, therefore, the courts of the United States had cognisance of it. And that, by the 9th and 11th sections of the judiciary law, their cognisance was declared to be exclusive of the state courts, unless otherwise provided by that or some other law of the United States; and it was said, that no such provision had been made, therefore, the conclusion was, that the state courts had no jurisdiction of this offence.

In answer to an objection, that the laws and constitution of the United States nowhere defined the crime of forgery, in such manner as to comprehend the offence charged in the indictment ; nor was the common law of England, relating to crimes and offences, extended to the United States ; nor was there any law of the United States which prescribed a punishment for forgeries generally. The act of congress for punishing certain crimes against the United States, Laws of United States, § 14, p. 151, and against \*xxviii.] forgery of indents or public securities of the United States, were \*cited, and the judiciary law, § 34, p. 112, which says that the laws of the several states, except where the constitution, treaties or statutes of the

Commonwealth v. Schaffer.

United States shall otherwise require, shall be regarded as the rules of decision, in trials at common law, in the courts of the United States. It has been inferred from hence, that the rule of punishment, in this case, would be the rule of the common law, if it obtained in the state, or such rule as the law of the state provided. 4 Bl. Com. 245, has been referred to for the definition and punishment of forgery at the common law.

*Henfield's case* has been referred to, which was an indictment in the circuit court of the United States, for a misdemeanor ; that he, being a citizen of the United States, entered on board a French privateer, to cruise against the British, with whom the United States were at peace, under a treaty. *Ravara's case* was also cited, who was a consul from the state of Genoa to the United States, and indicted in the district court of the United States, for a misdemeanor in sending a threatening letter to Benjamin Holland, for the purpose of obtaining money from him.

It was said, that there was no act of congress which either defined the offence or the punishment in those cases ; but it was said, that the common law would give the rule for both. It was argued, that whatever was necessary to the existence of the United States, must not depend upon the state courts. That this offence was committed in prejudice, and to the injury, of the United States, and therefore, the jurisdiction of it belongs to the courts of the United States. That under the constitution of the United States, no power is given to punish the offence of stealing records, robbery, perjury, and the laws of congress (p. 153) prescribe the punishment of these offences in particular cases. As the laws of congress have made provision, in these cases, without any power given by the constitution expressly for the purpose ; in the same manner, the authority of congress is competent to declare, by law, how the offence charged against John Schaffer, shall be tried and punished. And therefore, it is an offence not of state cognisance, but ought to be tried in the courts of the United States only.

Mr. Ingersoll and Mr. Thomas, in support of the jurisdiction of the court, referred to the following authorities. Const. of U. S. art. III. § 2 ; art. I. § 8, p. 8 ; 12th Amend. Const. U. S.; Resol. of Cong. vol. 8, p. 289 ; 4th July 1783, Ib. vol. 10, p. 366 ; 1st Aug. 1786, Ib. vol. 12, p. 114 ; 23d July 1787, 2 vol. Laws of Cong., p. 49, 52, 154 ; 2 vol. Federalist, p. 323, 324; Const. U. S. art. I. § 8 ; Laws of U. S. § 16, p. 151. *From these sources, [*xxix. a system of argument has been drawn, which, as it has been generally adopted by the court (in the sentiments they have formed) I shall forbear to state it minutely, but proceed to deliver the opinion of the court on the case before them.

The soldier who enlisted to serve during the war, and afterwards continued to serve to the end of it, had a right to demand and receive from the United States, a promised donation of 100 acres of land. This right had its inception under several resolutions of congress, passed in the year 1776, and it became a perfect right, at the close of the war, in the year 1783. The commonwealth of Pennsylvania, for a long course of time before the revolution, down to the present day, has always had subsisting laws, competent to the trial and punishment of every species of forgery that could be fabricated. In the year 1789, when the constitution of the United States was completely organized, it found this commonwealth in full possession of jurisdiction over this forgery. And as offences on this subject may have occurred after the

Commonwealth v. Schaffer.

peace, and before the existence of the present constitution, it is possible, that some instances of prosecutions on similar papers, may have taken place in the courts of this state, before the establishment of it, as several have been known to take place, in this court, since that period; particularly in the cases of *Dixen*, and *Mc Conchlan and wife*.

The important question is—what has been the effect of the constitution of the United States (and the laws which have been enacted under it), to divest this commonwealth of a jurisdiction of which, at the time it was made, it found the state constitutionally possessed?

The 1st and 3d articles of the constitution of the United States principally affect this question; they respect the legislative and judicial powers, and contain an extensive enumeration of subjects whereon their legislative power may be exercised, and to which the judicial power shall extend; and it is reasonable to say, that there may be powers which are not enumerated in it, but ought to be considered as granted by the constitution; for instance, those (if such there be) which are essential to the independence of the government, to its protection and defence, to such as grow out of the constitution, and out of the constitutional laws of congress.

If it be true, that this offence may be considered as growing out of an act of congress, because, if congress had never engaged to give lands to soldiers of a particular description, there never could have been a forgery of such a power of attorney: yet, it still remains a question, whether, under all existing circumstances, this court has jurisdiction. If the authority of congress is competent to declare the false making such a paper to be a *xxx.] crime of forgery, to prescribe its *punishment, and to appoint the place of trial to be in the courts of the United States, exclusively of the state courts; yet, on examination, it will be found, that congress has not, by an act, legislated on any of these points. No act of congress has, either definitely or by general description, made the false fabrication of such a writing to be a forgery, nor has any act declared how such a forgery or forgeries, generally, shall be punished. No act has given jurisdiction to any court, either concurrent or exclusive, to try the crimes of forgeries generally.

If these positions be true, they tend to show it doubtful, whether, at this day, under the existing laws of the United States, this forgery could be tried and punished in their courts; however, future laws may make them so.

To say that the constitution of the United States operated any abridgment of the jurisdiction of the state courts, as to crimes generally, of forgery, perjury, larceny, merely because they related to the interest or concerns of the United States, or their officers, acting under their laws, before they themselves, by their own acts, shall have provided for the punishment of such crimes, and taken order as to the jurisdiction of them, would lead to this consequence, that for a time, consistent with such doctrine, some crimes would, by law, be subject to no prosecution or punishment.

In the 2d vol. of the Federalist, pages 323, 324, which may be called a commentary on the constitution of the United States, contemporary with it, it is held, that " the states retain all pre-existing authorities which may not be exclusively delegated to the federal head; and that this exclusive delegation can only exist in one of three ways : 1. Where an authority is, in

Commonwealth v. Schaffer.

express terms, granted to the Union : 2. Or where a particular authority is granted to the Union, and the exercise of a like authority is prohibited to the states : 3. Or where an authority is granted to the Union, with which a similar authority in the states would be utterly incompatible. Though these principles may not apply with the same force to the judiciary as to the legislative power, yet I am inclined to think, that they are, in the main, just, with respect to the former as well as the latter ; and under this impression, I shall lay it down as a rule, "That the state courts will retain the jurisdiction they now have, unless it appears to be taken away in one of the enumerated ways." (Page 324.) "I am even of opinion, that, in every case in which they are not expressly excluded by the future acts of the national legislature, they will, of course, take cognisance of the causes to which those acts may give birth."

But the present case is not one of those which comes within the exceptions of that writer. 1st. The jurisdiction of this crime is not exclusively granted to the Union. 2d. It is not prohibited to the states. 3d. Nor, if it is granted to the Union, is it a case where a similar authority in the states would be incompatible.

*In the act of congress (p. 147) "for the punishment of certain [*xxxi. crimes," the murders or larcenies there mentioned, are such as may be committed within the forts, arsenals, dock-yards, federal district, places ceded by the states to the United States, or upon the high seas, perjuries in their own courts of justice under any act of congress, forgeries of indents or public securities. In general, they are those subjects submitted by the constitution to be legislated upon by them, and made subject to their judicial authority. Congress having exercised their power over many subjects submitted by the constitution, and to some arising under their laws ; but never having touched the present subject, of which this state had a pre-existing cognisance, it may be considered as *casus omissus* by their laws ; and until they shall, by some future act, exercise their authority over the subject by designating the crime, prescribing the punishment, and giving to the courts of the United States exclusive jurisdiction, this court may, constitutionally, take cognisance of the cause, and punish the offence, by the laws of this state. Therefore, the 11th section of the judiciary act, which gives to the circuit court exclusive cognisance of all crimes and offences cognisable under the authority of the United States, may be reasonably supposed not to have contemplated this case, which by no act of congress is designated as a crime, nor has it any appointed punishment.

The prosecution against *Henfield*, in the circuit court, was for a violation of his duty, as a citizen of the United States, in entering on board a French privateer, and cruising against the subjects of the king of Great Britain, with whom the United States were at peace, under the sanction of a treaty. This was contrary to the law of nations, to the treaty, and against the constitution of the United States. This was not a crime resulting from the regulations of an act of congress. *Ravara* was a public minister, a consul, and, therefore, the jurisdiction over him by the constitution was expressly to be exercised by the courts of the United States. Neither of these cases rests upon the principles on which the present case stands, and therefore, are no authorities.

The 34th section of the judiciary act (p. 112), which says, that the laws

of the several states, except where the constitution, treaties, or statutes of the United States shall otherwise direct, shall be regarded as the rules of decision, in trials at common law, in the courts of the United States, plainly refers to trials of a civil nature, according to the course of the common law, and not to the trial of crimes by the rules of the common law.

Upon this comprehensive view of the question, the court are of opinion, that they are competent to the jurisdiction of this cause, and therefore, do overrule the motion that has been made in arrest of judgment, founded on the objection to their want of jurisdiction.