# CROW v. OXFORD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

Submitted October 25, 1886. — Decided November 29, 1886.

In a suit on bonds of the same issue as those adjudged to be invalid, in *McClure* v. *Township of Oxford*, 94 U. S. 429, it was sought to uphold the bonds as issued under the general act of Kansas, of March 2d, 1872, c. 68, the bonds purporting, by their face, to have been issued under the special act of March 1st, 1872, c. 158. As the general act required certain proceedings to be taken before the bonds could be lawfully issued, and the town records showed that those proceedings were not taken, and that all that was done was done under the special act, the possibility that the bonds were issued under the general act was excluded, and the recitals in the bonds could not aid the plaintiff.

The case distinguished from *Commissioners* v. *January*, 94 U. S., 202, and *Anderson County* v. *Beal*, 113 U. S. 227.

The certificate of the auditor of the State, endorsed on each bond, that it was "regularly and legally issued," purporting to have been made in accordance with the general act, could not aid the plaintiff, because the bonds were not such as the auditor was authorized by that act to register and certify.

The case distinguished, in that respect, from *Lewis* v. *Commissioners*, 105 U. S. 739.

The case is stated in the opinion of the court.

*Mr. S. E. Brown* for plaintiff in error.

*Mr. J. Wade McDonald* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court:

This suit was brought in the Circuit Court of the United States for the District of Kansas, by Moses R. Crow against the Township of Oxford, in the County of Sumner, and State of Kansas, to recover the amount of ten bonds, of $500 each, issued by that township, and 140 coupons, of $25 each, cut from those bonds, being in all $8500. It was tried before the court, without a jury, a special finding of facts was made, and

a judgment was rendered for the defendant. The plaintiff has sued out a writ of error.

The defendant, on the 15th of April, 1872, made twenty bonds for $500 each. Coupons cut from some of those bonds were the subject of the suit of *McClure* v. *Township of Oxford*, 94 U. S. 429. The bonds and coupons involved in the present suit are all of the forms of the bond and coupon set out in the report of the McClure case, and each bond has endorsed on it, of the date of April 25th, 1872, a certificate duly signed by, and attested by the seal of office of the auditor of the State of Kansas, the certificate being in the form of that contained in the report of the McClure case.

The bonds were made for the purpose of aiding in the construction of a bridge across the Arkansas River, at the town of Oxford, in the township of Oxford; and were issued and delivered in payment for eighty five shares, of $100 each, of the stock of the Oxford Bridge Company, a corporation which erected the bridge, for which the township subscribed, and which it has ever since owned and held. The township paid interest on the bonds up to April 15th, 1877. It received dividends on the stock, amounting to about $650 per annum, from October, 1872, till June, 1876. The following proceedings were had and taken by the trustee, treasurer, and clerk of the township, on the following dates, as shown by the public records of the township:

"MARCH 8TH, 1872.

"Township board met.

"Present: George T. Walton, trustee, and John H. Folks, clerk.

"The fact being known to the clerk that an Act authorizing a majority of the township board to issue bonds for $10,000, and to subscribe stock in the Oxford Bridge Company, after giving notice thereof, and the voters of Oxford township voting thereon, was passed and approved on the 1st day of March 1872, and believing that, — owing to the danger of a June freshet, injuring or preventing work and increasing the cost of said bridge, and believing the law only required 20 days' notice, it was ordered that such notice be given imme-

diately, which notice was given by written notices posted on Clark's store, on the post-office at Stanton's store, and at the school-house in Oxford, believed to be three of the most public places in the township.

"GEORGE T. WALTON, *Trustee.*
JOHN H. FOLKS, *Clerk.*"

"MARCH 24TH, 1872.

"At a special meeting of the board of Oxford township, held this day — George T. Walton, trustee, and John H. Folks present — a copy of the — Commonwealth was presented, in which the law relating to the bridge bonds was published, in which it was made necessary to give 30 days' notice thereon. It was ordered that said election be held on the 8th day of April, 1872, and additional notices were appended to the original notice posted as above stated, so continuing the time until the said 8th day of April.

"GEORGE T. WALTON, *Trustee.*
JOHN H. FOLKS, *Clerk.*"

"APRIL 8TH, 1872.

"At a special election held in pursuance of notices and of the Act of March 1st, 1872, authorizing the trustee, treasurer, and clerk, or any two of them, of the township of Oxford, county of Sumner, and State of Kansas, to subscribe stock in the Oxford Bridge Company to the amount of $10,000, to aid in the construction of a bridge across the Arkansas River, at Oxford, in said county and State, and to issue bonds of said township in payment thereof: George T. Walton, Edward Slay, Sr., and James Thompson, judges; and James O. Carpenter and W. H. Knapp, clerks. Whole number of electors voting, 140; for the bridge and bonds, 126; against the bridge and bonds, 14. Walton to return poll-books.

"GEORGE T. WALTON, *Trustee.*
JOHN H. FOLKS, *Clerk.*"

"APRIL 10TH, 1872.

"At a meeting of the trustee and clerk of Oxford township, to take into consideration the subscribing of stock in the Oxford Bridge Company — present, George T. Walton, trustee, and

John H. Folks, clerk — it was ordered, that the said George T. Walton, trustee, and John H. Folks, clerk, do subscribe to the capital stock of the Oxford Bridge Company for such amount of capital stock as the ten thousand-dollar bonds may purchase, not to be less than eighty three shares of said stock, and the said George T. Walton and John H. Folks are further authorized to vote the number of votes said township shall be entitled to, at any meeting of stockholders of said bridge company, during their continuance in office, in pursuance of law. Also ordered, that a copy of said law be sealed in this book.

"GEORGE T. WALTON, *Trustee.*
JOHN H. FOLKS, *Clerk.*"

"APRIL 12TH, 1872.

"At a meeting of the board of Oxford township, George T. Walton, trustee, T. E. Clark, treasurer, and John H. Folks, clerk, were present, and subscribed the said bonds to the Oxford Bridge & Ferry Company, and participated in the stockholders' meeting of said company, for and on behalf of the said township; and George T. Walton, T. E. Clark, and John H. Folks were elected directors of said Oxford Bridge & Ferry Company. Said township board authorized William J. Hobson to procure the printing of suitable bonds, and also authorized said William J. Hobson to contract the sale of said bridge bonds at not less than 83 cents, and such higher amount as he may be able to procure; and it was further agreed by said William J. Hobson, in behalf of C. Baker & Co., that, if he shall not be able to sell said bonds for 83 cents or over, the said C. Baker & Co. will take said bonds in payment for the township stock, at 83 cents on the dollar, and make a good and sufficient bond to Oxford township, conditioned that said company will build said bridge, in all respects, in conformity to contract this day signed by the said C. Baker & Co. and the directors of said Oxford Bridge & Ferry Company, said bond to be delivered to the township board of Oxford township, and the bridge bonds to be delivered to said William J. Hobson as soon as may be after said bonds are printed.

"GEORGE T. WALTON, *Trustee.*
JOHN H. FOLKS, *Clerk.*"

No other proceedings were had or taken by or before the township board in respect to issuing the bonds, except that, on April 8th, 1872, an election was held in the township on the question, with the result set forth on the face of the bonds. The bridge was erected by the corporation, and was maintained as a toll bridge until it was destroyed by water on June 9th, 1876.

The plaintiff owns and holds the bonds and coupons sued on, having purchased them before their maturity, for value, without actual notice of any defence to them or of any defect or infirmity in the proceedings for issuing them.

The petition of the plaintiff alleged that the bonds were issued in pursuance of an election held in the township in conformity with an act of the Legislature of Kansas, passed March 2d, 1872, c. 68.

A special act of the Legislature of Kansas, approved March 1st, 1872, c. 158, entitled as set forth on the face of the bonds, authorized the trustee, treasurer, and clerk of Oxford township, (or any two of them,) to issue the bonds of the township, to the amount of $10,000, for the purpose of aiding in building such bridge. It required that the bonds should be in sums not less than $500, payable in ten years from the date of issuing, with interest at the rate of ten per cent. per annum, payable semi-annually, in the City of New York; that interest coupons should be attached, signed by the trustee and attested by the clerk; that the bonds should contain a statement of the purpose for which they were issued, and the result of the vote of the inhabitants of the township on the question of issuing the bonds; that before any of the bonds should be issued, the question of issuing them should be submitted to the legal voters of the township, at an election for that purpose; that the time and place of holding the election should be designated by the trustee, treasurer, and clerk, (or any two of them,) "by giving at least thirty days' notice, by posting written or printed notices thereof in three of the most public places in said township; and that if, at the election, a majority of the votes should be for the bridge and bonds, the bonds should be issued." Section 7 of the act was as follows: "This Act shall take

effect from and after its publication in the *Kansas Weekly Commonwealth.*" It was published in the *Kansas Weekly Commonwealth,* March 21st, 1872.

The act passed March 2d, 1872, c. 68, referred to in the petition as the act in conformity with which the election was held in pursuance of which the bonds were issued, was an act approved March 2d, 1872, § 24 of which provided that it should "take effect and be in force from and after its publication in the *Kansas Weekly Commonwealth.*" It was published in the *Kansas Weekly Commonwealth,* March 7th, 1872. It bore the title set forth in the auditor's certificate endorsed on the bonds, and was the act therein referred to. It was a general law applicable to all counties, cities, and townships. It embraced bridges, railroads, and water-power. It authorized the issuing of bonds to build bridges, and also as donations, and to pay for stock in aid of railroads and bridges. It graded the amount of bonded debt by taxable property. It allowed bonds of not less than $100, required them to be payable in the City of New York, in not less than five nor more than 30 years from their date, with interest not to exceed 10 per cent. per annum, payable semi-annually, on coupons, the bonds, if issued by a township, to be signed by the township trustee and attested by the township clerk. The bonds could not be issued unless ordered by a vote of the qualified electors of the township. To procure such vote, a petition was required, signed by at least one fifth of the voters of the township, to be presented to the trustee, clerk, and treasurer, asking for a vote; and they were to call an election to be held within 30 days thereafter, and to give notice of it by publication, for at least three consecutive weeks, in each newspaper published in the township, and, if none were published, by posting up written or printed notices in at least five public places in each voting precinct in the township, for at least 20 days preceding the election, the notice to set forth the time and place of holding the election, the bridge proposed to be built, and whether the aid was to be by donation or taking stock.

The question of the validity of the bonds involved in the McClure case was there passed upon by this court. No ques-

tion was there presented as to their validity under the act of March 2d, 1872, or as to their having been issued under that act, and not under the act of March 1st, 1872. It was there held, that, as the act of March 1st, 1872, did not go into effect till it was published, and it was not published till March 21st, 1872, and required 30 days' notice of the election, and as the bonds were dated April 15th, 1872, and stated that the election was held April 8th, 1872, and gave the title of the act, and the date of its approval, their invalidity appeared on their face, in connection with the terms of the act, because 30 days had not elapsed between the time the law took effect and the day of the election.

It is contended for the plaintiff in the present case, that, as the act of March 2d, 1872, took effect on March 7th, 1872, the day before the commencement of the proceedings for an election, and there was an interval of full 30 days between March 8th, 1872, and April 8th, 1872, the day of the election, there was legislative authority under the act of March 2d, 1872, for all that was done. It is urged that in the McClure case no reference was made, in the record or in the arguments of counsel, to the latter act, and that the question, as to the validity of the bonds under that act, is not controlled by the decision in the McClure case. The whole point of the contention in favor of the validity of the bonds is based on the proposition, that the bonds were in fact issued under the authority of, and in compliance with, the provisions of the act of March 2d, 1872, instead of the act of March 1st, 1872.

The plaintiff, being referred by the bonds to the act of March 1st, 1872, as the statute under which they were issued, was bound, as was said in the McClure case, to take notice of the statute and of all its requirements. If, finding the bonds invalid under that statute, as he is held by law to have done, he claims the right to refer to the act of March 2d, 1872, as the source of authority, because that act was in force from March 7th, 1872, he was bound to take notice of the requirements of that act. Looking at them, he was met by the fact that that act required that the proceedings should be initiated by a petition of voters to the trustee, clerk, and treasurer of

the township, and be followed by the publication of the notice of election for three consecutive weeks in each newspaper, if any, published in the township, and, if none were published, then by the posting of written or printed notices in at least five public places in each voting precinct in the township, for at least twenty days preceding the election. These proceedings were all variant from those to be had under the act of March 1st, 1872, which did not require any prior petition of voters, nor any newspaper publication of the notice, but only a posting of notices, and those only in three public places in the township, and not in five public places in each voting precinct in the township. Looking at the public records of the township, he was met by the following facts : The proceedings made no reference to the act of March 2d, 1872, or to any petition of voters, but stated that they were taken, under the act of March 1st, 1872, and that the officers gave thirty days' notice of election by posting written notices in only three public places in the township. Even though the plaintiff purchased the bond and coupons, as the finding of facts says, "before their maturity, for value, without actual notice of any defence to them, or of any defect or infirmity in the proceedings for issuing them," he was, in the absence of such recitals in the bonds as would protect him, bound by the information open to him in the official records of the officers whose names were signed to the bonds. The recitals in the bonds could not avail him, because, as to the only act recited, that of March 1st, 1872, that act was not in force long enough before the election to allow the required notice to be given; and, as to the act of March 2d, 1872, the records, which showed proceedings not in conformity with it, and the bonds, by the absence of all reference to it, and by their recitals as to the act of March 1st, 1872, excluded the possibility that the town officers issued the bonds, or intended to issue them, under the authority of, or in pursuance of, the act of March 2d, 1872. The statement in the bonds that they were issued "in pursuance of a vote of the qualified electors of said township, had an election held therein on the eighth day of April, A.D. 1872, which said election resulted in a majority of 112 in favor of

issuing said bonds, in a total vote of 140," can refer only to an election held under the act of March 1st, 1872, before recited in the bond by its title and date, which was an illegal election for want of due notice; and the records showed that the election was held under that act.

The case of *Anderson County* v. *Beal*, 113 U. S. 227, is relied on by the plaintiff, but does not aid him. In that case, although the bonds recited the wrong act, the records of the county officers who issued the bonds did not show any want of compliance with the later act, but showed a substantial compliance with it, and in fact the proceedings were had and were intended to be had under it. The reference in the bonds to the earlier act as the source of authority was thus a mere clerical error. In the case at bar, the reference in the bonds to the act of March 1st, 1872, was not a clerical error, and the proceedings were intended to be had under that act, and the records show a failure to comply with the act of March 2d, 1872, and an attempt to comply only with the act of March 1st, 1872. In the Anderson County case, legislative authority having been given for the issue of bonds by a statute under which the authorities in fact acted, the recital in the bonds, that the bonds were issued in pursuance of the vote of the electors, was effective to cover any irregularity as to notice, which did not appear of record, but was sought to be proved *aliunde.* In the present case, no such doctrine is applicable.

In *Commissioners* v. *January*, 94 U. S. 202, an act was recited in the bonds which had been repealed by a later act. The order for the election was made while the earlier act was in force. The election was held after its repeal, and after the new act went into force, but there was no new order of election. Otherwise, all the proceedings after the new act went into force were in conformity with it. It was held that a recital in the bonds, that they were issued "in pursuance of, and in accordance with, the vote of a majority of the qualified electors of the county," "at a regular election, held on" a day named, estopped the county from raising the objection of the want of an order under the new act, although the old act, and not the new act, was recited in the bonds, as the

statute authority. We think that case is distinguished from the present one by the fact, that in it all the proceedings after the new law took effect were in conformity with it, while in the case at bar, none of the proceedings were in conformity with the act of March 2d, 1872.

Another question is presented in the case before us. Section 14 of the act of March 2d, 1872, provides that the holder of bonds issued under it shall, within 30 days after their delivery, present them to the auditor of the State for registration, and that he shall, on being satisfied that the bonds have been issued according to the provisions of the act, and that the signatures thereto of the officers signing the same are genuine, register them in a book, "and shall, under his seal of office, certify upon such bonds the fact that they have been regularly and legally issued; that the signatures' thereto are genuine; and that such bonds have been registered in his office according to law." As each of the bonds in suit has endorsed on it a certificate under the hand and seal of office of the auditor of the State of Kansas, dated April 25th, 1872, certifying that it "has been regularly and legally issued; that the signatures thereto are genuine; and that such bond has been duly registered" in his office, in accordance with the act of March 2d, 1872, giving its title, it is contended, for the defendant, that this certificate concludes all questions as to the regularity and legality of the issuing of the bonds.

In *McClure* v. *Township of Oxford*, although the record set forth at length the certificate of the auditor on the bonds, and the brief of the plaintiff in error contended that such certificate was a final and conclusive determination that the bonds were regularly and legally issued, according to the provisions of the act of March 1st, 1872, this court, in its opinion, made no reference to that point. It was argued in that case, for the defendant in error, that the act of March 2d, 1872, as to registration, did not apply to the bonds, as bonds issued under the act of March 1st, 1872, and that, if it did, the registration could not, as a recital, aid the want of authority disclosed by the face of the bond.

But now it is contended that the provision for registration

in the act of March 2d, 1872, settles the question, that the bonds were bonds issued under that act, and were "regularly and legally issued," according to the provisions of that act. The case of *Lewis* v. *Commissioners*, 105 U. S. 739, is cited as sustaining that view. But we do not so regard it. In that case, § 14 of the Kansas act of March 2d, 1872, was under consideration in regard to the bonds of a county in Kansas, issued, in fact, under that act, each of which had endorsed on it a certificate by the State auditor, that it had been "regularly and legally issued," and that it had been registered in his office according to law. A defence was set up against a *bona fide* holder of the bonds, that they had been issued in violation of a condition contained in the popular vote, and were fraudulently parted with by the person in whose hands they were put, to be deposited with the State treasurer in escrow, to await a compliance with the condition. This court held, as to the effect of the registration, that the determination by the auditor involved an investigation as to every *fact* essential to the validity of the bonds; that the *bona fide* purchaser was not bound, under the circumstances disclosed in that case, to find out whether the auditor had ascertained all the facts; and that the auditor was authorized by the statute to inquire whether the bonds were, as a matter of *fact*, of the class which, under the act, should have passed through the hands of the State treasurer, (it being required by the act that some should do so, and others not,) and, also, whether the conditions on which they were deliverable had been performed. But there is nothing in the decision which carries the doctrine further than that the auditor is authorized to ascertain whether the *facts* exist which the statute requires, should exist, to make a valid issue of bonds. That this is so is shown by the case of *Dixon County* v. *Field*, 111 U. S. 83. In that case, there was an innocent holder of bonds, of a county in Nebraska, and on each bond was endorsed a certificate of the State auditor that the bond was "regularly and legally issued." As against an objection that the bonds were issued in violation of a restriction in the Constitution of the State as to the amount of bonds to be issued, it was held by

this court, under a registration statute like that in the present case, that no conclusive effect was given by the statute to the registration or to the certificate ; that the certificate was no more comprehensive or efficacious than the statement in the bond; that such statement did not extend to or cover matters of law ; and that " a certificate reciting the actual facts, and that thereby the bonds were conformable to the law, when, judicially speaking, they are not, will not make them so, nor can it work an estoppel upon the county to claim the protection of the law."

As the recitals in the bonds here are of no avail to the plaintiff, as before shown, so the certificate of the auditor does not aid him. The bonds on their face excluded the possibility of their having been issued under the act of March 2d, 1872, and as the public records showed that the proceedings were not taken under that act, and as the auditor was authorized by § 14 of that act only to register bonds issued under that act, and as these bonds did not fall within the purview of bonds authorized to be registered by him under § 15 of that act, it follows that the auditor had no right to decide, as matter of law, that the bonds were bonds of the kind which he was authorized by the act of March 2d, 1872, to register and certify, when, as a matter of law, they were not.

*Judgment affirmed.*