## CIRCUIT COURT OF BALTIMORE CITY.

Filed June 20, 1916.

NORTH BROTHERS MANUFACTURING COMPANY
VS.
MAAG-OSTENDORF COMPANY.

*James Thomas* for petitioner.
*Warren A. Stewart* for receivers.

DAWKINS, J.—

This is a petition to compel the receivers of the defendant company to pay over to the petitioner the sum of five hundred dollars received by them as proceeds of the sale of a one-half interest in a certain patent in connection with the making of bread pans.

The petitioner claims that William A. Whalen, the shop foreman for the defendant company, invented the patent mentioned and assigned to the petitioner a one-half interest in the same, which one-half interest was the sole property of John A. Ostendorf and was never intended to be conveyed to the defendant company. It is alleged that the patent right was assigned to the receivers under a fear and threat of criminal proceedings. The receivers contend that the one-half interest in the patent as a fact never belonged to the petitioner, but to the defendant company. They deny that any threats were made to compel a transfer, but that the said petitioner assigned the said interest to the receivers of his own free will as was his duty to do.

The only questions that seem necessary to consider in this case are:

1. Who was the real owner of the one-half interest in the patent represented by the $500 in controversy at the time of the appointment of receivers?

2. If John A. Ostendorf individually was the real owner, was the transfer to the receivers obtained from him by such fraud or duress as compelled him to turn over to the receivers what was his private property against his will and without consideration?

In solving these questions it is helpful to consider certain significant circumstances disclosed in the testimony.

The workmen of this company had been trying for some time to contrive a certain method of making a fastening joint on bread pans. The experiments looking to the accomplishment of that end were mostly conducted in the defendant company's shop in its time and with its material. Whalen was the foreman of the shop. Ostendorf was the president of the defendant company and practically the whole company, since the other large stockholder, Kemple, gave little or no personal attention to the business. Whalen knew no one but Ostendorf because he was the only one that acted for the company. Ostendorf took the device to the patent attorney, Mr. Mann, who supposed it belonged to the company, but later when Whalen was to sign papers he refused to make any assignment to the company, which made no difference to Ostendorf, as he wanted the company to have the benefit. The patent was issued July 28, 1914. About one year (July 27, 1915) after that date receivers for the company were appointed. During that period the pans had been manufactured and sold by the company. On June 29, 1915, one month before the receivers were appointed an agreement was entered into between Whalen, Ostendorf for himself and for the company (without telling any members of the company, even the secretary, of the agreement, though the seal was placed on the

paper), agreeing to pay certain royalties. Subsequently, on the 24th day of January, 1916, a claim was filed by Ostendorf against the estate of the company in which no claim was made for any part of the royalty alleged to be due upon the agreement, although in settling with Whalen when he bought out the one-half interest in the patent, his part of the royalty was adjusted, which Ostendorf knew.

Mr. Ostendorf testified that he thought the patent worth nothing, but at another time thought it had value. He consulted counsel and executed the assignment to the receivers the day after the alleged threats were made by Mr. Stewart. It was further testified that the costs of procuring the patent were paid by the company. Mr. Mann, the patent attorney, says Ostendorf left instructions to transfer the patent to the company, and this would have been done, save for Whalen's refusal to assent to the assignment in that form. Whalen's attorney only wanted the agreement to show his (Whalen's) interest, even though he knew the company was in financial trouble at the time the agreement was signed. Ostendorf had no thought of having any agreement for his supposed interest.

There can be but little difference of opinion as to the law applicable to the facts of this case. It is true that an assignment can take no title in a patent save by assignment from the *real* owner. There must be some sort of definite agreement or contract to entitle an employer to the benefit of the employe's creative genius, but if it be clearly shown that a trustee or receiver is entitled to the benefit of a patent, the Court has the power to compel the person in whose name it stands to assign it for the use of creditors. The patentee Whalen might not be divested of his title, but the company's rights could not be taken from it by Whalen assigning its one-half interest to Ostendorf, instead of to it.

119 U. S. 226, Hewett vs. Hapgood.

105 Ill. 649, Joliet Mfg. Co. case.

105 U. S.

All the circumstances seem to tend to establish the fact that there was never anything thought at the time this patent was applied for and taken out but that it belonged to the company and was gotten out for it, but that as Whalen was foreman and worked out the idea, he was to have a one-half interest, and that the other one-half interest belonged to the company. There is practically no contradiction as to this being the intention and as to the fact that it would have been issued to the company, save for Whalen's protest. If this be true, surely a mere technical chance naming of Ostendorf would not confirm his individual ownership in the one-half, other than the one-half that belonged to Whalen. If the company was the real owner, then the fraud and threats in connection with the assignment worked no injury to the petitioner, because he only assigned to the receivers what he was bound to assign to them and that the Court would have the right to require him to assign, and for which assignment the patent belonging to the company no consideration was necessary to be shown.

While it would be unnecessary to discuss the question of threats in view of the conclusion I have reached, it would seem but proper to say that the proof of anything in the nature of duress or fraud that compelled a transfer twenty-four hours after the same were alleged to have been perpetrated is not made out so as to justify a setting aside of the assignment for that cause.

For the reasons given the petition will be dismissed.