## MERCER COUNTY v. PROVIDENT LIFE & TRUST CO. OF PHILADELPHIA.

(Circuit Court of Appeals, Sixth Circuit. March 3, 1896.)

No. 326.

**1. RAILROAD AID BONDS—COMPLIANCE WITH CONDITIONS.**

A provision, in an act authorizing an issue of county bonds in aid of a railroad, that they should not be valid obligations until the road is constructed through the county, so that a train of cars shall pass thereover, is not satisfied by the construction of the road from one boundary of the county to a point two miles short of the opposite boundary, where it connects with another road running outside the county.

**2. SAME—ESTOPPEL TO QUESTION VALIDITY.**

Act May 15, 1886, authorizing Mercer county to subscribe to the capital stock of a railroad company, the subscription to be paid in county bonds, provided that the county judge should, after ascertaining whether the election authorized the issue of bonds, prepare and execute them, and order their deposit with a trustee; the latter to hold them in escrow, and to deliver them to the company when it became entitled to them by the construction of its road through the county. *Held,* that the trustee holding these bonds in escrow had no power to deliver these bonds until the actual completion of the railroad through the county from one side to another or opposite side, and that in the delivery of the bonds so held in escrow, before that condition had been complied with, he did so in violation of his duty and without authority of law. *Held,* that a purchaser of such bonds is chargeable with notice of the terms, conditions, and requirements of the act under which these bonds were issued, and took them with notice that the recitals of the bonds must be referred to the acts which under that permissive statute were to precede the execution of the bonds and their deposit in escrow, and could not operate as a recital of facts which could not have existed when the recitals were made. The bonds contained, therefore, no recital implying the construction of the railroad. *Held* that, under the proper construction of this act, the county of Mercer had no power to issue bonds until the railroad had actually been constructed "through" the county, and neither the decision of the trustee in escrow that that condition had been complied with, nor the consent of county officers to their delivery, nor the subsequent payment of interest, operates as estoppel preventing the county from showing as a defense that the condition upon which its power rested to issue these bonds had never been complied with.

**3. SAME—BONA FIDE PURCHASERS.**

The fact that the bonds were in form negotiable securities, and were bought on the open market by purchasers innocent as to noncompletion of the railroad, does not give such purchasers the status of bona fide purchasers for value; the bonds containing on their face no recital implying the completion of the railroad in whose aid they were issued.

Error to the Circuit Court of the United States for the District of Kentucky.

This was an action by the Provident Life & Trust Company of Philadelphia against the county of Mercer, in the state of Kentucky, on certain county bonds. There was a judgment for plaintiff, and defendant brings error. Reversed.

The county of Mercer subscribed for stock in the Louisville Southern Railroad Company to the extent of $125,000, and issued in payment therefor 125 bonds, each for $1,000, dated January 10, 1887, payable in 30 years, with interest payable semiannually, at 5 per cent., for which coupons were attached. These bonds, with past-due coupons detached, were received by the railroad

company in August, 1888, and 100 of them subsequently came to the hands of the Provident Life & Trust Company. This suit was brought upon 400 coupons past due and unpaid. The county denied liability upon the bonds, and presented a number of defenses, which, so far as now insisted upon, will be hereafter stated. A jury was waived, and the decision of the law and facts submitted to the Honorable John W. Barr, district judge, holding the circuit court, who made a special finding of facts, upon which he gave judgment against the county, and for the plaintiff below. The bonds were in the usual form of negotiable county bonds. The only recital concerning the authority for their issuance is in these words:

"This bond is one of a series of one hundred and twenty-five bonds of even date herewith, all of the same denomination and tenor, and numbered, consecutively, from one to one hundred and twenty-five; the same having been issued pursuant to the authority conferred upon the said county by an act of the legislature of Kentucky entitled 'An act to authorize the county of Mercer to subscribe aid to the Louisville Southern Railroad Company,' approved May 15th, 1886, and pursuant to an order entered by the county judge of said county in conformity with said act, subscribing in behalf of said county for the capital stock of the said Louisville Southern Railroad Company in the sum of one hundred and twenty-five thousand dollars ($125,000), which order was entered of record in said court on January tenth, A. D. eighteen hundred and eighty-seven (1887)."

The act granting power to subscribe for stock of the Southern Railroad Company, which is referred to in the recital above set out, was passed May 15, 1886. The first section of that statute authorized Mercer county to subscribe to the capital stock of the Louisville Southern Railroad Company, "as hereinafter provided," and that it might pay for same in the "negotiable coupon bonds of said county." The second section provided the method of applying for a subscription, and the manner in which a vote of the people should be taken upon the proposition for a subscription. The third and fourth sections were in these words.

"Sec. 3. As soon as may be thereafter, the county judge of such county shall determine if a majority of the legal votes cast at such election were in favor of such subscription, and if they were he shall thereupon enter an order subscribing in behalf of such county to the capital stock of the said railroad company in accordance with the terms of the proposition voted on, and he shall thereupon cause to be prepared and execute the negotiable bonds of such county as before mentioned, which shall be signed by him as county judge and attested by the county clerk, with his official seal affixed thereto, and the coupons shall be signed by said clerk.

"Sec. 4. The said bonds shall not be binding or valid obligations until the railway of the said company shall have been so completed through such county that a train of cars shall have passed over the same, at which time they shall be delivered to said railroad company in payment of the subscription of such county, and the county shall thereupon be entitled to receive certificates for the stock subscribed, and the county judge of such county shall order that such bonds shall be deposited with a trustee or trust company, to be held in escrow, and delivered to the said railroad company when it shall become entitled to the same by the construction of its road through such county: provided, however, that such trust company or trustee shall, before receiving such bonds, give bond, with good surety, approved by the county judge, for the faithful performance of his or its duty in the premises: and provided further, that no such subscription shall be binding unless such railroad shall pass to or through the corporate limits of the town of Harrodsburg."

Among the facts specifically found by the circuit court, and deemed essential to the proper decision of the questions now to be determined, are these:

(1) That all of the requirements, provisions, and conditions mentioned in sections 2 and 3 of the act of May 15, 1886, had been duly complied with.

(2) That one D. L. Moore was selected and appointed trustee by an order of the county court of Mercer county, and entered into bond for the faithful performance of his duty under the act aforesaid; the bond being payable to the state of Kentucky, for the use of Mercer county and the Louisville Southern Railroad Company.

(3) That thereupon the bonds of the county, duly signed and sealed, as provided by section 3 of the act, were deposited with him, to be held as provided in the act.

(4) That July 3, 1888, said Moore, being unable to satisfy himself as to the proper discharge of his duties, tendered his resignation, which was accepted; and on the same day one Isaac Pearson was appointed trustee by the Mercer county court, who gave bond of like character to that which had been required from Moore.

(5) Concerning the provision of section 3 of the act, that the bonds thus deposited in escrow should not be valid obligations "until the railway of the said company shall have been so constructed through such county that a train of cars shall have passed over the same," the court found that the Louisville Southern Railroad Company had constructed a line of railway from the boundary line between Anderson and Mercer counties, thence to Harrodsburg; that there was a railroad known as the "South-Western Railroad," which owned and operated a line between Harrodsburg and Burgin, in Mercer county, and that this piece of old road was consolidated with the Louisville Southern; at Burgin a junction was made with the Cincinnati Southern Railroad, an independent corporation, whose line extended from Cincinnati to Chattanooga, Tenn. The precise finding as to the location of Burgin, with reference to the nearest county line, was in these words: "The nearest point to Mercer county line from the South-Western Railroad is two miles. I think that the Louisville Southern Railroad did not run from one line of the county of Mercer through to the opposite or to another line of county, but that its railroad entered Mercer county on the line of said county next to Anderson county, and ran through said county fifteen miles to Harrodsburg, and from there to Burgin, where a junction was made with the Cincinnati Southern Railroad, making in all 19.72 miles of railroad in said county of Mercer; but this line of railroad did not reach the other or another line or boundary of the county, by about two miles from the nearest point. The railroad thus constructed gave a railroad connection by the Cincinnati Southern Railroad, either northeast to Cincinnati, Ohio, or southwest to Chattanooga, Tennessee. I find that about the time of the passage of a train of cars over said road from Louisville to Burgin, and for some time thereafter, there arose a question of whether the conditions precedent to the delivery of $105,000 of the bonds of the county had been complied with by the Louisville Southern Railroad Company. There was some difference of opinion among the taxpayers in said county upon this question, and the trustee, Moore, had doubts as to whether he could properly deliver these bonds; but there was no formal demand made upon or refused by him, for his resignation as trustee. This question of whether the railroad must be built from one line of the county to another was publicly and generally discussed. While this discussion was going on, and before Pearson, trustee, had determined that the condition precedent had been performed, and that he would deliver $105,000 of the bonds, the Louisville Southern Railroad prepared to extend its railroad toward and to the town of Danville, Boyle county, which was 7.47 miles distant from Harrodsburg, by acquiring the rights of way, with one exception, to the Mercer county line. There was a movement made to have the court of claims of said county instruct the trustee as to his duty in the premises, and that court, consisting of the county judge and the justices of the peace of said county, met on the 26th of June, 1888, and a full discussion was had before said court, which consisted of the county judge, Hon. John W. Hughes, and all of the justices of the peace of said county. The court, after argument, declined, as a court, to instruct the trustee as to his action; but, upon motion of one of the justices, they passed, and had spread upon the records, this resolution, viz.: 'G. J. Johnson, as justice of the peace of this county, offered into court the following motion, which is ordered to be noted of record, and is as follows: "The members of this court do not believe that they have any right to enter an order directing the trustee to deliver the bonds of this county to the Louisville Southern Railroad; but, as individuals, they are of the opinion that such delivery should be made, and the construction of the railroad not forced to the Boyle county line." And, said motion being seconded, the ayes and nays were taken, and resulted as follows: Ayes, 12; nays, none; not voting, two.' "

(6) The court found that thereafter "Pearson, trustee, decided that the conditions precedent had been performed by the Louisville Southern Railroad Company, and was entitled to the delivery of $105,000 of the bonds of Mercer county."

(7) The court further found that in August, 1888, said 105 bonds were delivered to said railroad company in the presence of the county judge of Mercer county, who cut off and destroyed the past-due coupons thereon before delivery, and that there was then delivered to said county judge a certificate for $105,000 of the capital stock of the railroad company, which was accepted and subsequently voted at two meetings of stockholders of said company, and that this stock had never been returned or tendered to said railroad company.

(8) The court further found "that said county of Mercer regularly levied an annual tax to meet the semiannual interest on said bonds, and paid interest thereon for the years 1889, 1890, and 1891, and the interest due January 1, 1892, and have not paid any interest on said bonds since that time.

(9) The court found that the plaintiff was a bona fide holder for value of the bonds mentioned, to the extent of $100,000, with the coupons thereon, and had no knowledge or notice of any defects either in the execution or delivery of same, or of any defense the county has or might present to the recovery of same.

J. B. Thompson and Alex. P. Humphrey, for plaintiff in error.

Thos. W. Bullitt and Samuel Dickson, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The primary question which is to be decided is this: Were the bonds now held by the appellee corporation issued without authority of law, and in violation of the restrictions and conditions imposed by the act of May 15, 1886, heretofore set out, and under which they purport to have been issued? If they were issued in violation of the substantial provisions of the permissive act, they were void, unless they have fallen into the hands of an innocent purchaser for value, and the requisite circumstances exist to constitute an estoppel, precluding the county from showing that in fact they were issued in violation of law.

Passing for the present all the conditions precedent to the actual preparation and formal execution of the bonds under the third section of the enabling act, we shall consider the terms and conditions imposed by the fourth section, so far as the issuance of the bonds is affected by that section. Aside from the positive provision of the fourth section, it is evident, upon obvious principles of law, that these bonds, when prepared and formally executed according to the provisions of the third section, were invalid obligations, as lacking the essential element of delivery,—a step as necessary to the validity of a bond or other negotiable instrument as it is to the existence of a deed. 1 Daniel, Neg. Inst. § 63; Young v. Clarendon Tp., 132 U. S. 353, 10 Sup. Ct. 107. But whatever doubt might exist as to the obligatory character of these bonds while still in the hands of the county officials who had prepared and signed them, the fourth section, in clear terms, resolves. No power to made delivery of the bonds was conferred upon the county judge, or any other officer of the county, and all duty and power

intrusted to them terminated with their formal execution; the act itself declaring that the bonds, thus apparently the formal contracts of the county, "shall not be binding or valid obligations until the railway of the said company shall have been so completed through such county that a train of cars shall have passed over the same, at which time they shall be delivered to said railroad company." The duty of the county judge with reference to these incomplete instruments pending compliance with the condition upon which they might become vital obligations, by delivery, was to "order that such bonds shall be deposited with a trustee or trust company, to be held in escrow, and delivered to the said railroad company when it shall become entitled to the same by the construction of its road through such county." This last statutory duty was performed, and the bonds were "deposited" with a trustee, to be held in escrow and delivered when the condition authorizing delivery had been performed. That condition was that the railroad of the Louisville Southern Railroad Company should be completed "through" the county of Mercer, so that a train of cars should have passed over the same. The defense of the county is that the railroad was never constructed through the county, and that the trustee violated his duty, and delivered them before that condition had been complied with. The finding of fact touching immediately upon compliance with this condition was "that the Louisville Southern Railroad did not run from one line of the county of Mercer through to the opposite or to another line of the county, but that its railroad entered Mercer county on the line of said county next to Anderson county, and ran through said county fifteen miles to Harrodsburg, and from there to Burgin, where a junction was made with the Cincinnati Southern Railroad, making in all 19.72 miles of railroad in said county of Mercer; but this line of railroad did not reach the other or another line or boundary of the county by about two miles from the nearest point." This finding seems to conclusively settle the question that the railroad company did not construct its railroad through the county. The requirement was that the road should be completed "through" the county,—not through the county to Harrodsburg, or to Burgin, or to a junction with the Cincinnati Southern Railroad, but through the county entirely; that is, from one side or line to the opposite or another side or line. If the legislature had used the very common preposition "through" in any limited or unusual sense, it would appear in the context. That it was used with its ordinary meaning of "from one side to the opposite side" or another side, or "from one surface or limit to the other surface or limit," seems to us very plain, from the whole tenor of the statute. That it was not used in the sense of "to" and "into" is plain, from the proviso of the same act, which brings the prepositions "to" and "through" into apposition, in the provision that "the subscription shall not be binding" "unless such railroad shall pass to or through the corporate limits of the town of Harrodsburg." The argument that this was a substantial compliance with the condition does not meet with our assent. The object of the act was to

secure to Mercer county a railroad entirely through the county. To build to within two miles of the statutory requirement is not a substantial fulfillment of the provision. Whether this was an important or unimportant matter, it is not for us to say. The legislature had the undoubted authority to impose this condition, or any other it saw fit. Whether wisely or unwisely, the power to issue any bonds was made dependent on the performance of this condition. The provisions that they should not be valid until the performance of this condition, and that the stakeholder should not deliver them until this railroad should be constructed through the county, are imperative, and limit the power of the county and of this trustee to the issuance of bonds only when the requisite facts actually existed. These restrictions were intended to secure the actual completion of the railroad, and guard against the possible misapplication of the bonds to purposes not designed. Restrictions in acts of this kind, intended to guard the public from the negligence or crimes of their officials, and to secure exact compliance with the terms upon which the power of taxation may be exercised in aid of railroad construction, are entitled to favorable consideration. The utterances of the supreme court upon the effect of restrictions and limitations in such legislation have been uniform, and announce a wise public policy. In Barnum v. Okolona, 148 U. S. 393, 13 Sup. Ct. 638, Mr. Justice Shiras, for the court, said:

"That municipal corporations have no power to issue bonds in aid of railroads, except by legislative permission; that the legislature, in granting permission to a municipality to issue its bonds in aid of a railroad, may impose such conditions as it may choose; and that such legislative permission does not carry with it authority to execute negotiable bonds, except subject to the restrictions and conditions of the enabling act,—are propositions so well settled by frequent decisions of this court that we need not pause to consider them. Sheboygan Co. v. Parker, 3 Wall. 93–96; Wells v. Supervisors, 102 U. S. 625; Claiborne Co. v. Brooks, 111 U. S. 400, 4 Sup. Ct. 489; Young v. Clarendon Tp., 132 U. S. 340–346, 10 Sup. Ct. 107."

In Barnett v. Denison, 145 U. S. 139, 12 Sup. Ct. 819, Mr. Justice Brown, in delivering the opinion of the court, said:

"The provisions of the statute authorizing them must be strictly pursued, and that the purchaser or holder of such bonds is chargeable with notice of the requirements of the law under which they are issued."

The conclusion we reach is that this condition has not been complied with, and that the trustee, in delivering these bonds, did so in violation of his duty, and acted without authority of law.

This brings us to the consideration of the question as to whether the county is estopped to make this defense. The learned trial judge found as a fact that the appellee bought in open market, for value, and with no actual knowledge that the conditions imposed by the enabling act had been in any way unperformed. That such a municipal corporation had no general authority to issue such negotiable securities, and that the purchaser is chargeable with notice of the terms, conditions, and requirements of the permissive statutes under which they purport to be issued, is

well settled.   Marsh v. Fulton Co., 10 Wall. 676; McClure v. Township of Oxford, 94 U. S. 429; Northern Bank v. Porter Tp., 110 U. S. 609, 4 Sup. Ct. 254; Barnett v. Denison, 145 U. S. 139, 12 Sup. Ct. 819; Barnum v. Okolona, 148 U. S. 395, 13 Sup. Ct. 638; Citizens' Sav. & Loan Ass'n v. Perry Co., 156 U. S. 701, 15 Sup. Ct. 547.

First, it is said that the recital in these bonds imports a compliance with all the restrictions and conditions of the enabling act, and that these recitals cannot be contradicted.   The recital in the bond is that it was "issued pursuant to the authority conferred upon the said county by an act of the legislature of Kentucky entitled, 'An act to authorize the county of Mercer to subscribe aid to the Louisville Southern Railroad Company,' approved May 15, 1886."   Looking to the act referred to, as the purchaser was bound to do, he discovered that these bonds were to be executed and deposited in escrow, and delivered only upon the completion of the Louisville Southern Railroad through the county of Mercer. By this provision he was advised that the recital that the bond "was issued pursuant to the authority" of the act referred to was a recital which, in the nature of things, could only refer to facts antecedent to the deposit of the bonds in escrow, and could not possibly operate as a recital covering the subsequent completion of the railroad through the county.   The enabling act operated as notice to him that the bonds were not "binding and valid obligations" when placed in escrow, and would not become valid and legal securities "until the railway of the said company shall have been so completed through such county that a train of cars shall have passed over the same."   The purchaser therefore bought with notice that the depositary held the bonds "in escrow," and had no power to deliver them until the company should "become entitled to the same by the construction of its road through the county." The recitals in the bonds must therefore be referred to the acts which, under the permissive law, were to precede the execution and deposit of the bonds in escrow, and do not operate as a recital of facts which could not have existed when they were made.   Where recitals are relied upon to cut off the defense that municipal bonds are in fact issued without authority of law, or in violation of law, they should be fairly and reasonably construed, and be such as to clearly indicate that the conditions and requisites of the law had been complied with.   Risley v. Village of Howell, 12 C. C. A. 218, 64 Fed. 453; Northern Bank v. Porter Tp., 110 U. S. 618, 619, 4 Sup. Ct. 254; School Dist. v. Stone, 106 U. S. 183–187, 1 Sup. Ct. 84.   In the case last cited, Mr. Justice Harlan, for the court, concerning the construction of words in a bond claimed to operate as a recital estopping a municipality from showing that the bonds had been issued in violation of law, said:

"Numerous cases have been determined in this court in which we have said that where a statute confers power upon a municipal corporation, upon the performance of certain precedent conditions, to execute bonds in aid of the construction of a railroad, or for other like purposes, and imposes upon certain officers—invested with authority to determine whether such conditions have been performed—the responsibility of issuing them when such conditions have

been complied with, recitals by such officers that the bonds have been issued 'in pursuance of,' or 'in conformity with,' or 'by virtue of,' or 'by authority of,' the statute, have been held, in favor of bona fide purchasers for value, to import full compliance with the statute, and to preclude inquiry as to whether the precedent conditions had been performed before the bonds were issued. But in all such cases, as a careful examination will show, the recitals fairly import a compliance, in all substantial respects, with the statute giving authority to issue the bonds. We are unwilling to enlarge or extend the rule now established by numerous decisions. Sound policy forbids it. Where the holder relies for protection upon mere recitals, they should at least be clear and unambiguous, in order to estop a municipal corporation, in whose name such bonds have been made, from showing that they were issued in violation or without the authority of law."

There is therefore no estoppel by recital because there is no statement in the bonds implying that the Louisville Southern Railroad had been completed through the county, as required by the provisions of the enabling act. Buchanan v. Litchfield, 102 U. S. 278; Carroll Co. v. Smith, 111 U. S. 561, 562, 4 Sup. Ct. 539; Lake County v. Graham, 130 U. S. 674, 9 Sup. Ct. 654; Citizens' Sav. & Loan Ass'n v. Perry Co., 156 U. S. 692–701, 15 Sup. Ct. 547. We have then to deal with bonds which contain no recital whatever implying that the most important of the conditions precedent specified in the enabling act, upon which the power to issue them depended, had been performed. In this respect the case is distinguished from cases where the recitals were such as to imply compliance with all precedent conditions, such as that they had been "issued pursuant" to a particular act, as in Knox Co. v. Aspinwall, 21 How. 540, or "by virtue of the law of the state entitled 'An act,'" etc., as in Insurance Co. v. Bruce, 105 U. S. 328, or "under and in pursuance of an act," etc., as in Lewis v. Commissioners, 105 U. S. 739, or "under authority of an act," etc., as in Oregon v. Jennings, 119 U. S. 74, 7 Sup. Ct. 124. This court, in Cadillac v. Institution, 7 C. C. A. 574, and 58 Fed. 935, 16 U. S. App. 545, held that, under an act authorizing the issuance of new bonds "to extend the time of payment of old bonds falling due," a recital that a bond was issued "for the purpose of extending the time of payment of bonds falling due" estopped the city from showing that the bonds thus refunded were void bonds. So in Risley v. Village of Howell, 12 C. C. A. 218, 64 Fed. 453, the bonds recited that they were issued under an act approved February 25, 1885, which act authorized the issuance of bonds "to raise money to make public improvements." It was held that it was not a defense to show that in fact the money obtained for the bonds had been expended under an ordinance, referred to in the bonds, for a purpose not a "public improvement," within the decisions of the supreme court of the state. On the contrary, the case falls distinctly within another class of cases, where the bonds either contained no recitals, or the recitals were made by one not intrusted with the duty of ascertaining and determining the facts recited. Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315; German Sav. Bank v. Franklin Co., 128 U. S. 526, 9 Sup. Ct. 159; Barnett v. Denison, 145 U. S. 139, 12 Sup. Ct. 819; Citizens' Sav. & Loan Ass'n v. Perry Co., 156 U. S. 701, 15 Sup. Ct. 547.

But it is argued that the Kentucky enabling act is peculiar, and that the absence of recitals in bonds issued thereunder is immaterial, inasmuch as the circumstances attending the execution of these bonds were such as that there could be no recitals on the face of the bonds importing performance of conditions which were to be complied with after their formal execution and deposit in escrow. This was the view entertained by Judge Barr, who, upon this ground, held that the decision of the trustee, before delivering them to the railroad company, that all precedent conditions had been complied with, precluded the county from contradicting that decision after the bonds had passed into the hands of innocent purchasers. To support this position it is necessary to construe this enabling act as not only empowering the trustee to ascertain and determine whether all conditions subsequent to such deposit had been performed, but that such determination should estop the county, as against an innocent purchaser of the bonds, although no such determination appeared on the bond, either through a recital or indorsement. Certainly none of the numerous opinions of the supreme court affords any express authority for such an interpretation of this act. A careful examination of the opinions of that court will, it is confidently believed, show that, where railroad construction bonds have been issued in violation of the law under which authority was granted, the municipality has never been held estopped to defend upon that ground, unless representations appeared on the bonds themselves importing full compliance with the conditions imposed by the enabling act. The estoppel has been a consequence of recitals or indorsements made by officials empowered to decide the facts recited, and which a purchaser was authorized to rely upon as speaking the truth. The rule which we deduce from the long line of the decisions made by that court as to the application of the doctrine of estoppel to municipal bonds is that where bonds are issued by a municipal corporation under a special and limited authority, imposing restrictions and conditions, but authorizing officials of such municipality to execute and issue such bonds when the conditions precedent imposed have been complied with, and it can fairly and reasonably be gathered from the act that the officials so authorized to execute the bonds were also empowered to ascertain and determine that the requisite facts and circumstances did exist, or all conditions precedent had been complied with, and this determination or decision has been embodied in the recitals of the bonds, a purchaser without other notice, and for value, would have a right to rely upon the truth of the representations appearing on the bond, and need make no further inquiry. Coloma v. Eaves, 92 U. S. 484; Dixon Co. v. Field, 111 U. S. 93, 4 Sup. Ct. 315; German Sav. Bank v. Franklin Co., 128 U. S. 526, 9 Sup. Ct. 159; Citizens' Sav. & Loan Ass'n v. Perry Co., 156 U. S. 701, 15 Sup. Ct. 547. The principle is that when bonds, on their face, affirmatively import a compliance with the conditions upon which they might lawfully issue, a defense based upon a contradiction of the

recitals thus made by an official empowered by the law to decide the facts recited will not be permitted, when the bond has come to the hands of a bona fide holder for value. This doctrine does not apply as between a railroad company receiving such bonds in violation of law, and the municipality itself; nor has it ever been applied in favor of a holder who was not an innocent purchaser for value. Dill. Mun. Corp. § 519; Chambers Co. v. Clews, 21 Wall. 317–321. False recitals have never been held conclusive as between the original parties, or in favor of purchasers with notice, for the obvious reason that an essential element to an estoppel in pais is that the representation should mislead and deceive one who had a right to rely upon the truth of the representation. It would seem to follow, from the reasons upon which an estoppel is said to arise, that if bonds are issued without recitals, but in violation of law or authority, there exists no reason why they should not be open to defense when action is brought even by one who bought without actual knowledge that they had been issued without performance of precedent conditions. In such case the purchaser buys at his peril, and cannot rely upon his mere ignorance, nor upon the mere fact that the bonds had been issued, and were found in circulation. Marsh v. Fulton Co., 10 Wall. 676; Buchanan v. Litchfield, 102 U. S. 278; Merchants' Exch. Nat. Bank v. Bergen Co., 115 U. S. 384, 6 Sup. Ct. 88; Daviess Co. v. Dickinson, 117 U. S. 657, 6 Sup. Ct. 897; German Sav. Bank v. Franklin Co., 128 U. S. 526, 9 Sup. Ct. 159; Carroll Co. v. Smith, 111 U. S. 556, 4 Sup. Ct. 539; Chambers Co. v. Clews, 21 Wall. 317–321; Citizens' Sav. & Loan Ass'n v. Perry Co., 156 U. S. 701, 15 Sup. Ct. 547; Barnett v. Denison, 145 U. S. 135, 12 Sup. Ct. 819.

The mere fact that the bonds have been issued, and are, in form, negotiable securities, if entitled to any significance whatever, would only raise a presumption that they had been delivered to the railroad company by the trustee in compliance with the terms of the law. Such a presumption would not be conclusive, and the county would not be estopped, even as against one who bought in actual ignorance of the true facts. This seems the well-settled rule, established by Buchanan v. Litchfield, Daviess Co. v. Dickinson, German Sav. Bank v. Franklin Co., and Citizens' Sav. & Loan Ass'n v. Perry Co., heretofore cited. In the case last cited this precise point was urged. Justice Harlan, for a unanimous court, in answer, said:

"But it is urged that, the bonds having been executed and issued by those whose duty it was to execute and issue them whenever that could be rightfully done, the county is estopped to plead their invalidity, as between it and a bona fide purchaser for value. This argument would have force if the material circumstances bringing the bonds within the authority given by law were recited in them. In such a case, according to the settled doctrines of this court, the county would be estopped to deny the truth of the recital, as against bona fide holders for value. But this court, in Buchanan v. Litchfield, 102 U. S. 278–292, upon full consideration, held that the mere fact that the bonds were issued, without any recital of the circumstances bringing them within the power granted, was not in itself conclusive proof, in favor of a bona fide holder, that the circumstances existed which authorized them to be issued."

Does the act under which these bonds were issued so far depart from the statutes construed in the cases cited as to warrant us in holding that a purchaser need make no further inquiry than would lead him to information that the trustee had made such a decision as that found by the circuit court, and that, if he buys without any inquiry, he is only obliged to prove by evidence extraneous to the bond that such a decision was in fact made? Unless this act can be construed as making the power of the county to issue these bonds dependent, not on the actual construction of this railroad through the county, but upon the decision of this trustee that it had been so constructed, the whole foundation for the argument disappears. This is the test to be applied to every case, even where recitals are relied upon to defeat a defense. In the leading case of Dixon Co. v. Field, 111 U. S. 93, 4 Sup. Ct. 315, the rule for construction of such enabling act is thus stated by Mr. Justice Matthews:

"But it still remains that there must be authority vested in the officers, by law, as to each necessary fact, whether enumerated or nonenumerated, to ascertain and determine its existence, and to guaranty to those dealing with them the truth and conclusiveness of their admissions. In such a case the meaning of the law granting power to issue bonds is that they may be issued, not upon the existence of certain facts, to be ascertained and determined whenever disputed, but upon the ascertainment and determination of their existence by the officers or body designated by law to issue the bonds upon such a contingency. This becomes very plain when we suppose the case of such a power granted to issue bonds, upon the existence of a state of facts to be ascertained and determined by some persons or tribunal other than those authorized to issue the bonds. In that case it would not be contended that a recital of the facts in the instrument itself, contrary to the finding of those charged by law with that duty, would have any legal effect."

It is to be observed at the outset that it is significant that while the act provides, in very plain language, that the requisite facts antecedent to the preparation and deposit of the bonds with the trustee shall be ascertained and determined by the county judge, no such explicit statement is found regarding the determination of the subsequent precedent conditions by this trustee. If he is empowered to make any determination whatever, the power is only inferentially granted. So it is significant that no provision is found requiring an indorsement of such decision on the bonds, or the making of some other permanent record that so grave a determination had been made. The very failure to provide in clear terms for a determination by this trustee of the existence of conditions which could only arise after the county judge had parted with the bonds and lost all control over them, and to provide for some method of certifying that determination, affords a strong presumption against the interpretation now contended for. Especially is this noticeable in view of the very well defined distinction between bonds with and without recitals. But it is said that the act authorized the making of "negotiable bonds," and that it ought not to be presumed that the legislature intended that "negotiable bonds" should be forever open to the defense that the railroad had never been completed as required by the act, and that we ought, therefore, to infer that the trustee was authorized to

decide as to whether there had been a compliance with this condition, and that his decision should be conclusive. Undoubtedly, the commercial value of such bonds would be much improved if the mere fact of their issuance should, in favor of innocent holders, be conclusive evidence of both the authority to issue them and the regularity of the exercise of that power. This, however, is not the law. If the legislature, by providing that these bonds should be negotiable, meant to cut off all defenses, by the decision of the county judge as to facts antecedent to the deposit in escrow, and by the decision of the trustee as to all facts subsequent to such deposit, it is most remarkable that it did not provide for some indorsement of that decision on the bonds. As it is, the fact that he ever made such a decision depends upon evidence in pais, and is subject to all the dangers of such evidence. The argument based on the inconvenience of making proof, in every action on such bonds, of the fact of the completion of the railroad, amounts to little, in arriving at the meaning of this act, if the litigant in such a suit is driven to make proof of a decision by the trustee by evidence equally difficult to preserve. But this provision authorizing the issuance of "negotiable bonds" must not be construed alone, nor merely in connection with the provision that the trustee should deliver them when the railroad was completed. There are many considerations which lead us to the conclusion that, while it was undoubtedly the duty of this custodian to inform himself as to the existence of the facts which would justify him in making a delivery of these bonds, yet that information was only for the purpose of enabling him to prudently discharge his duty, and protect himself and the parties interested from the consequence of an illegal and unauthorized delivery. The power of this depositary to receive, hold, and deliver these bonds came from the enabling act alone. He was not constituted the agent of either the railroad company or the county, though he was designated by an order of the county judge. This depositary need not have been a person at all. A corporate trust company might have been designated. Neither residence, citizenship, nor interest in or knowledge of the locality was essential to the competency of the appointee. The relation, therefore, that this depositary bore to the county, is not of such a character as to lead to the presumption that it was intended that he should conclude the county through any agency for or relation to it. The bonds were not to be "delivered" to him, but "deposited" with him. Delivery is just as essential to the existence of a bond, note, or other negotiable instrument as it is to a deed. 1 Daniel, Neg. Inst. § 63 et seq.; Young v. Clarendon Tp., 132 U. S. 353, 10 Sup. Ct. 107. Though they had been prepared and signed, they were absolute nullities until delivered, and they could not take effect as bonds until an authorized delivery. When prepared and signed by the county judge and clerk, and sealed, the power of these officials ceased. They could not perfect them by delivery, because the statute gave them no such power. What the county judge then did was to deposit them with the depositary provided under the statute. This was not a delivery, and the

bonds continued imperfect obligations until a delivery which could only be made by the custodian when the railroad was completed. The power to perfect them as bonds arose only when the condition mentioned had been performed. A delivery before the railroad was begun would not have completed the making of these bonds, for the power was to deliver them when it was finished, and the act itself provided expressly that until then the bonds should not be valid, thus affirming the imperfect character of the bonds until a delivery was lawfully made. Young v. Clarendon Tp., cited above. The imperfect character of the bonds, until the condition precedent had been performed, is further made manifest by the direction of the act that they should "be held in escrow and delivered to the said railroad company when it shall become entitled to them by the construction of its road through such county." This term, "in escrow," is one strictly applicable to deeds; and a direction that such imperfect obligations, executed subject to conditions and restrictions, by a maker having no general authority to issue such paper, should be held in escrow, implies that the term was used just as it would be used if the subject-matter of the deposit was a deed. As used, the term implied the state or condition of a deed conditionally held by a third person, to be delivered and to take effect upon the happening of a condition. Bouv. Law Dict.; Black. Law Dict. When a deed is delivered as an escrow, nothing passes by the deed, unless the condition is performed. Calhoun Co. v. American Emigrant Co., 93 U. S. 124; 6 Am. & Eng. Enc. Law, 867; Taylor v. Craig, 2 J. J. Marsh, 449.

Counsel have very ably argued that a distinction exists between the effect of a delivery in violation of the conditions, where the thing in escrow was negotiable paper, and has come to the hands of an innocent purchaser without notice, and for value. 1 Daniel, Neg. Inst. §§ 68, 855, 856; Taylor v. Craig, 2 J. J. Marsh, 449. Possibly such distinction is sound, though if the purchaser bought with notice that the paper had been held in escrow, and that the trustee had no power to deliver until a condition had arisen, of which the purchaser likewise had notice, he could hardly be regarded as a bona fide holder. Every one dealing with an agent assumes all the risk of a lack of authority in the agent to do what he does. Negotiable paper is no more protected against this inquiry than any other. The purchaser of these bonds bought with notice that they had been held in escrow. The authority of the custodian was not a secret. Herein is the distinction between this case and that class of cases where paper is fraudulently issued by an agent who is authorized to make and issue negotiable paper in the business of his principal, and the question whether the paper issued is in the business of the principal is peculiarly within the knowledge of the agent, and not known to the world or a stranger. In such cases the agent is impliedly authorized to represent the existence of the fact upon which his agency depends. Farmers' Nat. Bank v. Sutton Manuf'g Co., 6 U. S. App. 312, 332, 3 C. C. A. 1, and 52 Fed. 191. It is difficult to see why one who takes such bonds as those in suit is not just as much obliged to look to the authority of the

trustee to deliver as if the subject of the escrow had been a deed. We are to remember that these bonds were imperfet obligations, there having been no delivery when placed in escrow. The question first presented to an intending buyer is this: Have these bonds become executed, valid obligations, by delivery? The authority of this trustee to make delivery depended upon the same principles that determine such authority in other contracts, "and is not aided by the doctrine that, when once lawfully made, negotiable paper has a more liberal protection than other contracts in the hands of innocent holders." The Floyd Acceptances, 7 Wall. 666–680. "The authority to contract must exist, before any protection as an innocent purchaser can be claimed by the holder." Marsh v. Fulton Co., 10 Wall. 683. But, aside from any distinction between the effect of a wrongful delivery of a deed and of commercial paper upon the title of an innocent purchaser, it seems very clear that the express declaration of the fourth section of the act that these bonds should not be valid obligations until the railroad had been completed through the county, and by the further provision that they should be held in escrow until that event, settles conclusively that the legislature did not mean that the power of the county to so obligate itself should depend upon the mere opinion of the custodian, but upon the actual, objective existence of the requisite fact. The whole scope and tenor of the act leads to the conclusion that the legislature intended to protect the county against any misapplication of these bonds, and therefore limited its power so that the bonds only became its obligations when the contract between the railroad company and the county should become complete. The machinery devised indicates that the purpose was that the railroad should not part with its stock certificates until it had received payment therefor. And, to secure the county against failure to complete the road, all power to issue bonds was made dependent upon its actual construction. To secure the railroad in obtaining the bonds when actually earned, it was provided that when a favorable vote had been cast, and the subscription made, the bonds should be prepared and formally executed, and placed in the hands of a stakeholder, to be delivered when the railroad company had performed its agreement. To secure the county against the possible breach of duty by this custodian, his holding was to be in escrow, and his power to deliver withheld until the actual performance of all precedent conditions. To further protect the county against an unauthorized delivery of the bonds, the act, in plain terms, provided that they should not be valid obligations until the completion of the road. That the custodian was required to give a bond for the due discharge of his trust by no means implies that the county was to look to this bond in case of an unauthorized delivery. The bond was no more for the benefit of one party than the other. A wrongful delivery, or a fraudulent use of them, might, irrespective of a defense, if sued upon the bonds, involve a costly litigation. It was eminently reasonable that the custodian of such securities, negotiable in form, should give security to protect both parties against negligence,

conversion, embezzlement, or any willful refusal to faithfully perform the trust.

It is next insisted that the county should be held responsible upon the principle that, whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. This principle can have no application here, for two reasons: First, the holders of these bonds cannot be regarded as innocent purchasers, inasmuch as they are constructively chargeable with all that inquiry would have disclosed; and, second, the bonds, as bonds of a municipal corporation, are invalid, for want of power to issue them until the actual completion of the railroad in whose aid they were authorized. Neither are the bonds validated because of the payment of interest for a time after their issuance. The question here is not one of mere irregularity in the method of exercising a power. The defense presented goes to the power of the county. There was no authority to issue bonds in aid of the railroad until the road had been constructed through the county. That condition having never been complied with, neither the county court nor the county judge could, by any act of omission or commission, waive its performance. Neither could the county court or any of the county officials validate them by subsequent acts of ratification. If the power to issue them did not exist when they were issued, no payment of interest, or resolution to adopt them, can operate to make them valid contracts. Ratification can only be effective when the party ratifying possesses the power to perform the act ratified. Marsh v. Fulton Co., 10 Wall. 676–684; Norton v. Shelby Co., 118 U. S. 425–451, 6 Sup. Ct. 1121. In Doon Tp. v. Cummins, 142 U. S. 366–376, 12 Sup. Ct. 220, the court, through Mr. Justice Gray, said:

"A ratification can have no greater effect than a previous authority, and debts which neither the district nor its officers had any power to authorize or create cannot be ratified or validated by either of them, by the payment of interest, or otherwise."

That the county still holds the railroad stock received when these bonds were delivered is no reason for holding these bonds valid. By proper proceedings the railroad company can recover this stock, or compel payment for its value. Justice would demand the return of the stock, or compensation for its value. No such question exists in this case. Norton v. Shelby Co., 118 U. S. 454, 6 Sup. Ct. 1121. The judgment must be reversed and remanded, with direction to render judgment in accordance with this opinion.