RISLEY v. VILLAGE OF HOWELL.

(Circuit Court of Appeals, Sixth Circuit. October 15, 1894.)

No. 174.

MUNICIPAL BONDS—VALIDITY—FRAUD IN EXERCISE OF POWER TO ISSUE.

If, in municipal bonds, the recitals of facts, taken collectively, are such as naturally and reasonably would inspire the confidence and belief of purchasers in the existence of the conditions which would make their issue lawful, and that was the intended and expected consequence of incorporating those recitals in the bonds, a bona fide purchaser would not be chargeable with notice, and defeated in his right of recovery as such, by the fact that an ordinance, recited in the bonds by its date only, misappropriated the bonds to an unlawful use. Hackett v. Ottawa, 99 U. S. 86, followed.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This was an action by Oliver H. K. Risley against the village of Howell on certain bonds and coupons. Judgment was given for the defendant. 57 Fed. 544. Plaintiff brings error.

This case was brought here upon a writ of error to the circuit court for the Eastern district of Michigan. The facts were found by the court, a jury having been waived. Upon the facts thus found the conclusions of law were resolved against the plaintiff, and, judgment in conformity therewith having also been rendered against him, he sued out this writ, alleging that upon the facts found the judgment should have been for him. The action was brought to recover the amount claimed to be due upon certain bonds and coupons issued by the defendant.

The legislature of the state of Michigan in 1885 passed an act (found in the Local Acts of that year at page 16) authorizing the common council of the village of Howell to borrow money on its faith and credit, and to issue its bonds therefor, to the amount of $20,000, which should be expended in making public improvements in the village, upon a vote of a majority of the electors of the village in favor of such loan, at a meeting called as provided in the act. This power was substantially conferred by the first section. Section 2 provided for the manner of taking the vote. Section 3 provided that: "If such loan shall be authorized by a majority of such electors, said bonds may be issued in such sums not exceeding the amount hereinbefore limited, and payable at such times with such rates of interest, not exceeding six per centum per annum, as the said common council shall direct, and shall be signed by the president of said village and countersigned by the recorder of said village, and negotiated by or under the direction of said common council, and the money arising therefrom shall be appropriated in such manner as said common council shall determine for the purpose aforesaid, and the said common council shall have power, and it shall be their duty, to raise by tax upon the taxable property of said village, such sum or sums as shall be sufficient to pay the amount of said bonds and the interest thereon as fast as the same may become due." This act was approved February 25, 1885, and ordered by the legislature to take immediate effect. On the following 5th day of March the common council of the village passed a resolution to submit to the electors the question whether money should be raised to the amount of $20,000, to be secured by the bonds of the village, for the purpose of making public improvements therein, and directing the manner of the submission. The election was held on the 23d day of March ensuing, in accordance with the provisions of the above resolution, and resulted in a vote of 437, in a total vote of 443, in favor of the proposition submitted. The vote was canvassed by the common council, and the result minuted in its records. No action was taken by the common council in reference to the subject until the 12th day of August, 1885, upon which day it adopted an

ordinance reciting the above-mentioned act of the legislature and the vote of the electors in favor of the loan, resolving that the village borrow the said sum of $20,000, at 6 per cent. interest, payable semiannually on the 1st days of June and December in each year until paid, for making public improvements in the village; and further resolving "that the Toledo, Ann Arbor & North Michigan Railroad Company is a public improvement in the village of Howell." The ordinance then proceeded to declare that bonds to the amount of $20,000, payable with interest at 6 per cent., at times and in amounts therein specified, be issued in aid of said railroad company, and payable to James M. Ashley, Jr., the agent of the company, or bearer, but not to be delivered to him except in accordance with a contract between Ashley, the railroad company, and the village, of that date. The substance of the contract consisted of provisions relating to the conditions and time when the bonds should be delivered to the payee; the principal condition being that the company's road should be built ready for the running of trains between certain specified localities, and a certificate to that effect of the state railroad commissioner be made and filed with the Fourth National Bank of New York, which was in the meantime to hold the bonds as depository. There was an attempt by one of the citizens of the village to prevent by legal measures the issuance of the bonds, but it was evaded by the common council, and the bonds were transmitted to the bank in New York. At the time of the making and depositing of the bonds in the bank they were not sealed, the village having no seal; but subsequently one was procured, and the president of the common council proceeded to New York, and there sealed the bonds.

On or about the 25th day of September, 1886, the railroad commissioner of the state made the certificate required by the contract above mentioned, showing the performance of the conditions. It was filed with the bank in New York, and the bonds were thereupon delivered by it to the payee, James M. Ashley, Jr. The bonds were all in the following form, except as to the number borne by each and the date of maturity thereof:

No. ————                                                    $1,000.00.

"The United States of America.

"State of Michigan [Michigan coat of arms], Village of Howell.

"Improvement Bond.

"Know all men by these presents, that the village of Howell, in the state of Michigan, acknowledges to owe and promises to pay to J. M. Ashley, Jr., or bearer, one thousand dollars, lawful money of the United States of America, on the first day of ————, in the year of our Lord one thousand eight hundred and ————, at the Fourth National Bank, in the city of New York, with interest at the rate of six per centum per annum, payable semiannually on the first days of December and June in each year, on the surrender of the annexed coupons as they severally become due. This bond is issued under and by authority of a special act of the state of Michigan, entitled 'An act to authorize the village of Howell to raise money to make public improvements in the village of Howell, being No. 248 of the Local Acts of 1885 of the legislature of the state of Michigan,' approved February 25, 1885, and also under the ordinance of the village of Howell passed August 12, 1885.

"In testimony whereof, the said village of Howell has caused these presents to be signed by the president and recorder of said village, and to be sealed with the seal of said village, this twelfth day of August, A. D. 1885.

"[Seal.]                                            [Sgd.] Geo. H. Chapel.
                                                    "[Sgd.] Jay Corson."

They were numbered from 1 to 20, and fell due at dates running from January 1, 1888, to June 1, 1897, and bore interest coupons in usual form. The bonds and coupons were all disposed of by Ashley for the benefit of the railroad company. The plaintiff is the owner and holder of part of these bonds and coupons. Others he holds in trust for other persons. He and the other owners of the bonds in suit are bona fide purchasers for a valuable consideration, without notice of any infirmity in the bonds, unless they are charged with notice of what was contained in the ordinance above mentioned, and which is referred to on the face of the bonds.

Luke S. Montague, for plaintiff in error.

Edwin F. Conely and Orla B. Taylor, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

Having made the foregoing statement of the facts, SEVERENS, District Judge, delivered the opinion of the court.

In the determination of the validity of municipal bonds of the character of those involved in the present suit, two questions of controlling importance are quite often presented. The first one is whether the municipality was empowered by the legislature to issue bonds of the character of those in suit; and, secondly, if such authority is found, but some irregularity or fraud has attended their issue, what effect should be given to representations of facts contained in the bonds where they have come into the hands of bona fide purchasers, who have bought them for value, in reliance upon the truth of such representations? As to the question of power, there has been apparently a growing tendency in the courts to look with close scrutiny into the source of the authority for the making and issuing of such bonds, and to deny the power unless it is given expressly or by clear implication. But if the power is found to exist, and bonds have been issued in professed execution of the power, containing recitals of things done by the municipality or its officials in conformity with the requirements of the authorizing statute, and those things are peculiarly within the knowledge and duty of the officials executing the bonds, there has been no relaxation of the rule which protects bona fide purchasers relying upon the truth of representations made in the bonds against the irregularities and frauds of the municipality or the officials who represent it in the exercise of the power. In the present case there can be no question but that at the time when these bonds were executed the common council of the village of Howell had complete authority in law and in fact to issue and negotiate the bonds of the village for the purpose of raising money to be applied in the making of such public improvements as the common council should determine. The statute and the vote of the electors supplied all the required authority. The validity of a law in all substantial particulars identical with this was recognized by the supreme court of Michigan in the case of Common Council of Cedar Springs v. Schlich, 81 Mich. 405, 45 N. W. 994, where it was also held that a court of equity would not, at the suit of the village, enjoin the negotiation of bonds which the common council had by fraudulent evasion issued in aid of the same railroad company under circumstances much the same as those involved in the present record.

It is material to notice, in passing, the order of things in the transaction as prescribed by the statute. First, a vote of the electors was to be taken whether the common council should be permitted to borrow money and issue bonds for a lawful purpose thereafter to be determined by the common council. The proceeds of the bonds were intended by the statute to be brought into the treasury of the

village. Then, secondly, the common council were to determine the kind of public improvement to which the funds should be devoted. Thirdly, that being done, the fund was to be devoted to the payment of the expenses of the public improvement thus determined upon. The vice in the transaction in which these bonds were issued was in the malfeasance of the common council in misappropriating the bonds to an unlawful use. It was the settled law of Michigan that it was incompetent for the legislature, under the constitution thereof, to authorize the municipalities of the state to aid in the construction of railroads. People v. Salem, 20 Mich. 452; Bay City v. State Treasurer, 23 Mich. 499. Whether the electors contemplated the ultimate disposition which was made of these bonds or not, it was an abuse of the powers of the common council to make that disposition of them, and a legal fraud upon the village. That fraud was perpetrated in the execution of a power which they were exercising in behalf of the village, and, as respects an innocent holder, the fraud in the diversion of the bonds themselves or their proceeds was the fraud of the principal in whose name the bonds were issued, and the village must abide the responsibility therefor. It was said by this court in the case of Cadillac v. Institution for Savings, 7 C. C. A. 574, 58 Fed. 935, repeating the language of the supreme court in former decisions, that a corporation is held by the same obligations as an individual to adhere to the truth in its dealings with others, and that it cannot defeat the claims which its own conduct and representations have superinduced; and, in the nature of things, its representations must be those made by its officials. The circuit court of appeals for the Eighth circuit, in a well-considered opinion, just published, clearly indicates the demarkation between those questions which relate to the authority to issue bonds and those which concern the regularity of its exercise, and emphasizes the obligation of good faith towards purchasers in the exercise of the power. National Life Ins. Co. v. Board of Education, 10 C. C. A. 637, 62 Fed. 778. If the plaintiff, and those from whom he derived his title, were chargeable with notice of the fraud, the bonds would not be enforceable against the village. Thus far there seems to be no serious controversy. But it is claimed in behalf of the defendant that these obligations bore upon their face a reference to the ordinance directing their issue which disclosed their fraudulent character, and that the recital of the ordinance was notice to any purchaser of the bonds of the facts appearing from the ordinance, and which he would have learned from an inspection thereof. This brings us to the vital question in the case, and presents the point upon which the court below seems to have turned the case in favor of the defendant.

In order to determine what effect should be given to this part of the recitals in the bonds, reference must be had to the whole instrument under the just and familiar rule of construction. In one part of each of the bonds it was represented that it was an "improvement bond." This, taken in connection with the subsequent reference to the statute, meant that it was a bond issued to provide means for a public improvement. In another place it was represented that the bond was "issued under and by authority of a special act of the state

of Michigan entitled 'An act to authorize the village of Howell to make public improvements in the village of Howell,' being Act 248 of the Local Acts of 1885 of the legislature of the state of Michigan, approved February 25, 1885, and also under the ordinance of the village of Howell, passed August 12, 1885." What was the meaning of this representation? To say that a thing is done "under and by the authority" of a statute referred to is equivalent to saying that it is done in conformity with it, and authorized by it. In Stoddard v. Chambers, 2 How. 284, 317, the supreme court said, in speaking of a statute which excluded from its operation locations of land previously made "under any law of the United States": "Now, an act under a law means in conformity with it, and unless the location of the defendant shall have been made agreeably to law" he is not within the exception. Bringing all the recitals in the bonds together, they amount to a representation that they were issued to raise money to defray the expenses of a public improvement of a kind to be determined by the common council, that the requirements of the law had all been complied with, and that an ordinance in conformity with the law had been passed directing their issuance; for if the ordinance was not in conformity with the law, inasmuch as it preceded the issue of the bonds, it falsified the preceding statement that the bonds were issued in conformity with the statute. And we can entertain no doubt whatever but that this was precisely the way in which the framers of these bonds intended the recitals to be construed. They were inserted to fortify the bonds, and give assurance of their legal validity to purchasers, and invite their confidence. Read in the light of the known purpose of the makers, it cannot but be believed that it was intended to represent that the ordinance for the issue of the bonds was in pursuance of the statute which had just been recited. Least of all can it be believed that the framers of these bonds intended by the reference to the ordinance to challenge the attention of purchasers to it, or expect that that would follow by reason of the reference.

The general rule of construction applies, that in determining the intent and meaning of any part the general purpose of the whole is to be regarded. And it would seem a very just rule also that the meaning which the maker of an instrument intends and expects the other party to put upon it should be adopted if the other has accepted it in that sense, and the words will bear that construction. The import of these recitals is substantially the same as of those in the bonds involved in Hackett v. Ottawa, 99 U. S. 86, and Ottawa v. National Bank, 105 U. S. 343; and in respect to the ground for an estoppel the case is not distinguishable from those. There the bonds recited that they were issued by virtue of the charter of the city, and in accordance with an ordinance of the city council entitled "An ordinance to provide for a loan for municipal purposes." It was held that these recitals estopped the city from denying, as against a bona fide holder, that the law had been complied with in the issue of the bonds. The authority of these decisions has never been questioned, and it is unnecessary to cite the long list of cases in which they have been cited and approved. It makes no substantial differ-

ence that in those cases the recital of the ordinance stated the title indicating the purpose of the ordinance, showing it to be a legal one, and that in the present case such statement is made by necessary implication from other language employed.

There is nothing in the case of Barnett v. Denison, 145 U. S. 135, 12 Sup. Ct. 819, opposed to this conclusion. That case, as stated by Mr. Justice Brown, in delivering the opinion of the court, involved "the single question whether a requirement of a charter that the bonds issued by a municipal corporation shall specify for what purpose they are issued is so far satisfied by a bond which purports on its face to be issued, by virtue of an ordinance, the date of which is given, but not its title or contents, as to cut off defenses which might otherwise be made." Much reliance is placed upon an excerpt from that opinion of language used arguendo by Mr. Justice Brown that "ordinarily the recital of the fact that the bonds were issued in pur- ·suance of a certain ordinance would be notice that they were issued for a purpose specified in such ordinance." This might be literally true if that recital were the only one in the ordinance, and thus stood unaffected by any context. But reference to the opinion shows that the writer was considering the effect of the recital as a representation by which the city would be bound, for he refers to Hackett v. Ottawa and Ottawa v. National Bank, above cited, where the only question pertinent to the discussion was whether the city was estopped by the recital of the purpose for which the ordinance was passed. The defendant, however, contends that the plaintiff cannot set up an estoppel against the village, for the reason that the action of the common council was a matter of record, which was open to anybody for examination. The cases cited in support of this contention do not, however, support it. In Crow v. Oxford, 119 U. S. 215, 7 Sup. Ct. 180, the bonds in suit purported to have been is- sued under a statute of Kansas of March 1, 1872, and it further ap- peared from the bonds themselves that that law had not been in force long enough to allow the notice of election which it required to have been given prior to their issue. But the plaintiff, notwith- standing all this, claimed to recover upon the ground that there was another statute of Kansas, passed March 2, 1872, which authorized the issue of such bonds, and which was in force long enough to have allowed the requisite notice of election. The public records of the proceedings, however, upon which the bonds were issued, showed that they were taken under the act recited in the bonds, and not under the other act which was invoked to support them. Relative to the duty of the purchaser to examine those records, the court said (at page 222, 119 U. S., and page 180, 7 Sup. Ct.): "Even though the plaintiff purchased the bonds and coupons," as the finding of the fact says, "before their maturity, for value, without actual notice of any defense to them, or of any defect or infirmity in the proceedings for issuing them, he was, in the absence of such recitals in the bonds as, would protect him, bound by the information open to him in the official records of the officers whose names were signed to the bonds." The court then proceeded to decide that the recitals did not protect the plaintiff, but, on the contrary, showed that, as already said, no

adequate notice could possibly have been given. In Nesbit v. Independent District, 144 U. S. 610, 12 Sup. Ct. 746, bonds had been issued by the municipal corporation in excess of the limitation imposed by the constitution of the state. The bonds were held to be void for lack of power. The question whether the power to issue such bonds at all was exhausted, and no longer existing, involved the inquiry whether the limited amount had already been reached; and it was held, in the absence of an express recital of the number of bonds which had been issued, that the purchaser was bound to refer to the public records, which disclosed the fact of the overissue, and that he was affected by notice of the facts he could thus have ascertained. In that case the question was the primary one of the existence of authority, and not one of irregularity in the exercise of a power confessedly existing, and it belongs to that class of cases where it has been held that no recital implying the existence of the power could supply the lack of it. The case of Sutliff v. Lake County Com'rs, 147 U. S. 230, 13 Sup. Ct. 318, was a case of the same character. The bonds in suit were part of an issue in excess of the limitation prescribed by the constitution of the state, and, as the public records to which the purchaser had access disclosed the lack of power, he was held bound by the facts disclosed by them, notwithstanding the recital in the bonds that they were issued in conformity with the statute. That case is distinguishable upon the same ground as in the last case above referred to.

We are of opinion that, upon the facts found, the common council had complete authority to issue such bonds as these in suit, and that the defendant is estopped from setting up the fraudulent conduct of its own officials in the issue of them by the assurances contained in their recitals that they were issued in pursuance of the statute authorizing them. The judgment must be reversed, and the cause remanded to the court below, with directions to enter judgment for the plaintiff for the amount of the bonds and coupons in suit, with interest at the rate therein specified.