### VILLAGE OF KENT v. DANA.

(Circuit Court of Appeals, Sixth Circuit. February 12, 1900.)

No. 737.

1. MUNICIPAL BONDS—DEFENSES—ESTOPPEL BY RECITALS.

A municipal corporation having the power to issue bonds for the refunding of its indebtedness, and having exercised that power by passing an ordinance directed to that purpose, and by issuing negotiable bonds in due form, reciting that they are issued in conformity with the statute, and that all the requirements of the law have been duly complied with, and all the conditions precedent exist, cannot deny its obligation as against a bona fide holder, who purchased such bonds for value, before maturity, and defeat recovery thereon, by showing that the recitals are false, and were made for the purpose of enabling the corporation to market the bonds, which were in fact issued for an unauthorized and illegal purpose.

**2. SAME—VALIDITY—SUFFICIENCY OF RECITALS.**

Rev. St. Ohio, § 2703, relating to municipal bonds, requires that "all bonds issued under authority of this chapter shall express upon their face the purpose for which they were issued and under what ordinance." Among other purposes for which bonds are authorized to be issued by that chapter is one for extending the term of the payment of any indebtedness which, by reason of its limits of taxation, the municipality is unable to pay at maturity. *Held,* that bonds of a village, which are denominated "refunding bonds," and which specify the date of the ordinance under which they are issued, and recite that they are issued "for the purpose of procuring the necessary means to refund and extend the time of payment of certain outstanding general fund bonds heretofore legally issued by said village, which, from its limits of taxation, the said village is unable to pay at maturity," sufficiently comply with the statute in that regard.

**3. PARTIES—ACTION ON MUNICIPAL BONDS—TITLE OF PLAINTIFF.**

A holder of negotiable municipal bonds transferable by delivery may maintain an action thereon in his own name, although they were transferred to him by the former holder for that express purpose, and he is accountable to such former holder for the proceeds, and such right is not affected by a state statute requiring suits to be brought by the real party in interest, since he is vested with the legal title. In such case the fact may be shown for the purpose of permitting any defense which might have been made against the former holder, but beyond that the defendant has no interest in the equities which may exist between the transferror and transferee.

**4. MUNICIPAL BONDS—ESTOPPEL BY RECITALS.**

The fact that municipal bonds bear a date prior to the time when the ordinance under which they were issued went into effect under the statute, is not sufficient to defeat recovery on such bonds in the hands of a bona fide holder, where there is no proof of the date of their actual issue, and their premature issue would be contrary to the recitals on the face of the bonds.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

This action was brought by Edward Dana, who was the plaintiff in the court below, and who is the defendant in error here, to recover upon 75 interest coupons of $30 each, maturing, part of them, September 1, 1896, part March 1, 1897, and the remainder September 1, 1897. These coupons were originally attached to certain refunding bonds, being part of an issue of such bonds issued by the village of Kent, the defendant below, which is a municipal corporation in Portage county, Ohio. The bonds bear date March 1, 1892, and were numbered from 1 to 80, respectively, being for the sum of $1,000 each. The bonds are not yet due. The following is the form of one of the bonds and a coupon, as set forth in the petition, the several bonds and coupons differing only in the dates when they were respectively payable and in the number:

"United States of America.

"No. ————.                                                                                    $1,000.

"State of Ohio.                                          Portage County.

"Village of Kent.

"Refunding Bond.

"Know all men by these presents, that the village of Kent, in Portage county, state of Ohio, is indebted to and promises to pay the bearer the sum of one thousand dollars in lawful money of the United States of America, at the National Bank of North America, in the city of New York, on the first day of March, A. D. 19—, with interest thereon at the rate of six per cent. per annum, payable semiannually on the first day of March and September of each year, upon the presentation and delivery of the proper coupon hereunto annexed, signed by the village clerk, at the said National Bank of North America, in the city of New York. And the said village is hereby held and firmly bound, and its faith and credit and all the real and personal property

of said village are hereby pledged, for the prompt payment of this bond and interest at maturity. This bond is one of a series of bonds of like date and tenor, issued for the purpose of procuring the necessary means to refund and extend the time of payment of certain outstanding general fund bonds heretofore legally issued by said village, which, from its limits of taxation, the said village is unable to pay at maturity. This bond is issued and executed under and by authority of and in accordance with an ordinance duly passed by the village council, February 15, A. D. 1892. And it is hereby certified and recited that all acts, conditions, and things required to be done precedent to and in the issuing of said bonds have been properly done, happened, and performed in regular and due form as required by law. And it is also certified that all statutory and constitutional provisions have been fully complied with in the creating of this indebtedness. In testimony whereof, we, the undersigned officers of the village of Kent, Ohio, being duly authorized to execute this obligation in its behalf, have hereunto set our official signatures, and caused the seal of said village to be hereunto affixed, this first day of March, A. D. 1892.

"[Corporate Seal.]                                  C. B. Newton, Mayor,
                                                "Frank Arighi, Clerk."

"30.                                                        No. 9.

"On the first day of September, 1896, the village of Kent, Portage county, state of Ohio, will pay the bearer thirty dollars, at the National Bank of North America, in the city of New York, being six months' interest due on refunding bond No. 1.                        Frank Arighi, Village Clerk."

The ordinance under which these bonds were issued was the following:

"An ordinance to provide for issuing of bonds of the village of Kent, Ohio, for the purpose of extending the time of payment of certain indebtedness, which from its limits of taxation, said village is unable to pay at maturity.

"Be it ordained by the council of the village of Kent, Ohio:

"Section 1. That for the purpose of extending the time of payment of so much of its existing indebtedness now due, and to become due, as said village is unable from its limits of taxation to pay at maturity, there be issued the bonds of said village in the sum of eighty thousand dollars ($80,000) as hereinafter provided.

"Sec. 2. That said bonds shall be of the denomination of one thousand dollars ($1,000) each, and shall be numbered from one to eighty, both inclusive, and shall bear date the first day of March, A. D. 1892, and shall become due and payable as follows, to wit: Ten thousand dollars March 1, 1915, ten thousand dollars March 1, 1916, ten thousand dollars March 1, 1917, ten thousand dollars March 1, 1918, ten thousand dollars March 1, 1919, ten thousand dollars March 1, 1920, ten thousand dollars March 1, 1921, ten thousand dollars March 1, 1922. Said bonds shall bear interest at the rate of six per cent. per annum, payable semiannually, on the first day of March and September of each year, and the several installments of interest shall be evidenced by the coupons attached to said bonds. and both interest and principal shall be payable, as they severally become due, at the National Bank of North America, in the city of New York. Said bonds shall express upon their face the purpose for which they are issued, and that they are issued under and in pursuance of this ordinance, and shall be signed by the mayor and countersigned by the clerk of said village, under the corporate seal of said village.

"Sec. 3. That the mayor and clerk of said village are hereby authorized and directed as soon as practicable, to prepare and execute said bonds and the proceeds thereof, when they shall have been disposed of according to law, shall be used and applied under the direction of the council for the sole purpose of paying off and extending the time of payment of said maturing and matured indebtedness of said village.

"Sec. 4. This ordinance shall take effect in ten days after its publication according to law. Done at the council chambers this 15th day of February, A. D. 1892. Passed February 15th, 1892.                        C. B. Newton, Mayor.
   "Frank Arighi, Clerk."

This ordinance was duly published in a weekly newspaper on the 20th day of February, 1892.

The defendant, the village of Kent, alleged by way of defense: "That on or about the 1st day of March, 1892, one C. B. Newton, who was then mayor of said village of Kent, and Frank Arighi, who was then the clerk of said village of Kent, pretended to execute on behalf of said village of Kent what purported to be eighty bonds for the sum of $1,000 each, together with interest coupons attached thereto, which bonds and interest coupons were, respectively, for the sums mentioned in the petition, and purported to mature, respectively, the amounts and at the times stated in the petition. But it says that the said C. B. Newton, as such mayor, and said Frank Arighi, as such clerk, had no power or authority at the time to execute or issue such or any bonds, or coupons, or any of them on behalf of this defendant. And it says that said pretended bonds and coupons were not issued for the purpose of procuring necessary means to refund and extend the time of payment of certain then outstanding general fund bonds theretofore legally issued by said village, which, from its limit of taxation, the said village was unable to pay at maturity; and it says that there was at the time no outstanding general fund bonds or any other bonds of said village outstanding or maturing, and that the said village was not indebted at the time in any sum whatever upon any of its bonds theretofore issued, nor were any such bonds of the defendant in any sum whatever then outstanding, nor had the defendant at said time or theretofore issued any of its bonds; and it says that any issue of bonds by the defendant at said time would be to that extent an increase of the indebtedness in that amount of the defendant. It says that the said pretended bonds did not, upon their face, express the purpose for which they were purported to be issued, nor any purpose for which they purported to be issued; and, admitting that the defendant is a municipal corporation, and a village of the first class, as averred in the petition, it denies every averment and fact stated in the petition not herein specifically admitted; and it asks to be hence dismissed, and to recover its costs."

These averments of the answer were denied by the plaintiff below in his reply, and upon the issue so made the case came on for trial. It was agreed between counsel for the parties that the form of the bond as set up in the petition and the form of the coupon, and the execution of the bonds and coupons in that form, might be treated as having been proved or admitted. Further evidence was introduced, tending to show that subsequently to the execution of the bonds and their coupons they were purchased by the Rutland Savings Bank, a banking institution doing business at Rutland, in the state of Vermont, from Spitzer & Co., who were dealers in municipal securities, at Boston, in the state of Massachusetts; that the bank at the time of such purchase paid their full nominal value, with a small premium. The coupons were paid for a time, but default was made on those maturing after March 1, 1896. It was also proven that the coupons in suit were transferred by the bank to Dana at a time prior to the commencement of the suit; that they were delivered to him; and that the transaction was, in form, at least, a purchase, Dana having given his check for the price thereof; but it further appeared that this check had never been collected. It was further shown by testimony of the officials of the bank that this transfer was made for the purpose of enabling Dana to bring suit for the recovery of the amount due upon the coupons, and for the reason that the bank might be discredited by the bringing of suits on investments made by it. In endeavoring to establish its defense, the defendant called as a witness Frank Arighi, and put questions to him adapted to that purpose. Objection being made upon the ground that the defendant was precluded from proving the facts set up in its answer as against the plaintiff, who was a bona fide holder of the bonds, counsel thereupon offered to show that the village of Kent had engaged in the unlawful enterprise of aiding by its bonds a glass factory located there, and had passed an ordinance to that end; that those bonds had not in fact been issued; that, instead thereof, the ordinance of February 15, 1892, was passed, and these refunding bonds were issued, and that this fraudulent and unlawful scheme was adopted for the purpose of bringing the transaction within the authorized power to issue refunding bonds. Counsel for defendant stated that they

should offer no further evidence upon the subject of the bona fides of the savings bank; and from the colloquy which ensued between the court and counsel it appears that the questions at issue were reduced to these two: First, whether it was competent for the defendant to prove that there was no valid debt or obligation of the village to be refunded when the refunding ordinance was passed and the bonds in question issued; and, second, whether the plaintiff, Dana, had such title to the coupons in suit as entitled him to recover. The court, being of opinion that the defendant's position in respect to both of these questions was untenable, sustained the objections to the proof offered. To this ruling the defendant's counsel took an exception. No further evidence being tendered, the court directed a verdict for the plaintiff, to which also an exception was duly taken. The verdict and judgment having passed for the plaintiff, the defendant brought this writ of error.

E. J. Blandin, for plaintiff in error.
John H. Doyle, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge, having stated the case as above, delivered the opinion of the court.

The questions which were argued, and with which we have to deal in this case, are:

1. Whether it is competent for a municipal corporation, having the power to issue bonds for the refunding of its indebtedness, and having exercised that power by passing an ordinance directed to that purpose, and issued in due form its negotiable bonds, reciting that they are issued in conformity with the statute, and that all the requirements of the law have been duly complied with, and that all the conditions precedent exist, to deny its obligation as against a bona fide holder thereof for value, who has taken them before maturity. We think this question must be answered in the negative. To say nothing of the great number of decisions upon cases similar to this in their essential characteristics, which it would be a waste of time to go over, we shall refer only to the case of Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760, and the cases of City of Cadillac v. Woonsocket Inst. for Savings, 16 U. S. App. 545, 7 C. C. A. 574, 58 Fed. 935, and Risley v. Village of Howell, 22 U. S. App. 635, 12 C. C. A. 218, 64 Fed. 453, decided by this court. It must be admitted that the scheme of issuing the bonds of the village for the purpose of promoting a glass factory was unlawful, and the device of exercising an unquestioned power of the council of the village to give its obligations the appearance of validity was in point of law a great abuse of authority. But it is evident enough that the electors of the village, as well as the members of the council, were involved in the conspiracy to gain an unlawful end, by professing an honest and lawful purpose, and using the means permitted for such purpose. It would be an utter perversion of justice if, by such an exploit, the result finally worked out should be that the public, who have confided in the good faith and the integrity of the representations of those who sent the bonds into the market, should be made to pay the intended bonus to the glass factory, while the promoters

of the scheme reap the benefits which were expected to result there-from. In the case of the City of Cadillac, above cited, a like abuse of authority occurred. Bonds had been issued in aid of a railroad. Under the law of Michigan that was not authorized. But there was a statute which authorized the refunding of municipal obliga-tions, and resort was had to the help of that statute to give a law-ful appearance to the bonds, and thereby induce people to buy them. The bonds professed to be refunding bonds, and contained recitals covering the same essential facts as do those in the present case. The bonds were sold, and went into the hands of bona fide purchasers for value, who were compelled to bring suit to recover their money. The defenses were that the old bonds were void, and constituted no foundation for the exercise of the power to refund; and it was further contended that the new bonds were void, because they did not comply with a statute which required that they should show to what class of indebtedness they belonged, and from what fund payable. But this court held that the city was estopped, by the representations on the face of the bonds, from disputing, as against a bona fide holder, the fact that the new bonds were issued to take up old bonds falling due; and it was there said:

"Power was conferred by the act upon the common council to issue new bonds to take up old bonds falling due. The question whether there were any such bonds is referred to the council. The old bonds, on the facts found by the circuit court, were, at the least, colorable obligations. The council determined to issue new bonds, and take them up. It seems to us that upon these circumstances it did not devolve upon the purchaser of the new bond to look into the validity of the refunded old bonds."

Then, as to the objection that the bonds did not show the class of indebtedness to which they belonged and the fund from which they were payable, it was held that the fact that the bonds stated upon their face that they were "refunding bonds," and that they were issued "for the purpose of extending the time of payment of bonds formerly issued by said city," showed a sufficient compliance with the statutory requirement in that regard, and that, where the bonds were issued to refund former obligations, it was not neces-sary to state the class of the old obligations, refunding bonds being a class of themselves; and, further, that the bonds showed with sufficient certainty the fund from which they were payable.

2. The Ohio statute (Rev. St. § 2703) requires that "all bonds is-sued under authority of this chapter shall express upon their face the purpose for which they were issued, and under what ordinance." Among other "purposes" for which bonds were authorized by that chapter is that specified by section 2701, where they are author-ized to be issued "for the purpose of extending the term of the pay-ment of any indebtedness incurred which," etc. Other sections of the chapter provide for the issuing of original bonds for various purposes. The facts in respect to the statutory provisions of Ohio bearing upon this question are substantially the same as those found in the Cadillac Case to exist in Michigan. Our attention has been called to a decision of one of the circuit courts in Ohio (an inter-

mediate appellate court of that state) in the case of Keehn v. City of Wooster, 13 Ohio Cir. Ct. R. 270, in which it was held that the requirement of section 2703 that such bonds should show upon their face the purpose for which they are issued is not met by the recital that they were issued for the purpose of refunding a legal and subsisting indebtedness of the municipality. The case of City of Cadillac v. Woonsocket Inst. for Savings is referred to and distinguished upon the differing language of the statutes of Michigan and Ohio; that of the former requiring that the bonds shall show the class of indebtedness to which they belong, while that of the latter requires that the bonds should show the purpose for which they are issued. But, with great respect, we think this difference is not material to the question under discussion, which is whether it is necessary, in issuing refunding bonds, to go beyond the immediate purpose, and recite the character of the original indebtedness for which the refunded bonds were issued. However, this case was decided several years after these bonds were issued, and we could not regard it as obligatory, even if it had been rendered by the highest court of the state, although we might regret the necessity for differing from it. The decision is not in harmony with the principles affirmed in the Cadillac Case, and we are compelled to disregard it.

In Risley v. Village of Howell, supra, it appeared that the legislature of the state had passed a special act authorizing the common council of the village to borrow money, and issue its bonds therefor, to be expended for local public improvements, provided a vote of the electors should be in favor of it. Such a vote was taken, and thereupon the common council passed an ordinance declaring that a certain railroad which was to run through the village was a public improvement, and providing that the proceeds of the bonds which had been voted should be applied to aid the railroad. The declaration of this ordinance that the railroad was a public improvement was in the teeth of the express holding of the supreme court of the state that railroads were not such improvements as could be promoted by taxation of municipalities in Michigan. But the bonds were issued bearing upon their face recitals that they were improvement bonds, and that they were issued under the authority of the act relating to public improvements, and under the ordinance of the village of Howell; and thereafter came into the hands of a bona fide purchaser. The village, upon being sued, resisted upon the grounds that the bonds were issued for an illegal purpose; that the issuance of the bonds was not authorized, and was a wanton abuse of the power by the officials of the village; and that all persons were charged with notice of these facts by the ordinance recited in the bonds. This court had no doubt, and has none here, of the illegality of the purpose of the proceedings of the common council of the village in issuing the bonds thus covertly for a forbidden object; but as the bonds professed, and on their face appeared, to be issued in promoting an object authorized by the statute, we held that the fraud was that of the agents of the village, and that the consequences of it could not be visited upon innocent parties. We further held that the reference to the ordinance was not sufficient

to put the purchaser upon inquiry in view of the fact that the re-cital was that the bonds were issued under the authority of the statute, and, as an ordinance providing for the issue was in the common course of the execution of the statutory authority, the purchaser had the right to suppose that it was in conformity with the statute, and was not thereby put upon inquiry as to the lawfulness of the purpose for which the bonds were issued. And these views were confirmed by the supreme court of the United States in Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760, decided not long after, in a case involving very similar facts. Section 2703 of the Ohio statutes, above referred to, contains a requirement, not contained in the Michigan statutes, that "all bonds issued under the authority of this chapter shall express * * * under what ordinance they were issued." This requirement is also fully met by the recital in the bonds that they were issued under the authority of "an ordinance duly passed by the village council February 15, A. D. 1892." The recitals in the bonds from which the coupons in the bonds here sued upon were taken contained very full and ample recitals of the existence of all the facts which were required for their lawful issue, and seem to show that those making them were at pains to assure the public of their genuineness and validity, and to invite the purchasers' confidence.

3. Upon the question of the right of the plaintiff to bring the action we think there is no difficulty. Doubtless it was competent for the defendant to show that the savings bank had the beneficial interest in the subject of the suit in order to let in any defense which it might have as against the bank; but it had no further interest in the matter. Assuming that the savings bank delivered these coupons to Dana for the purpose of enabling him to bring suit upon them, that he gave his check therefor, and that it was understood between them that he should turn over the proceeds of the collection to the bank, and take up his check,—which is a construction of the evidence as favorable to the defendant as it would bear,—still this would suffice to enable him to bring the suit in his own name. His right to recover would be no larger than that of the bank. In that respect he would stand precisely in its position, and, if the bank was a bona fide holder, he would recover in that character. The title to negotiable paper payable to the bearer passes by delivery, unless the attendant circumstances show that such was not the intention. But here the bank transferred these coupons for the purpose of enabling him to bring suit. It is implied in that that such title should pass as would enable him to sue, for without it the object of the transfer could not be accomplished. Possession of such paper where it is payable to bearer, or where it is payable by indorsement to the holder, coupled with an authority to bring suit upon it, is sufficient for that purpose. In Law v. Parnell, 7 C. B. (N. S.) 282, the action was brought in the name of an agent as custodian of paper held for another, but indorsed in blank, the agent being authorized by his principal to bring suit upon it. It was held that he had sufficient title to maintain the suit, Earle, C. J., saying:

"The bill being indorsed in blank, the bank.had the right to hand it over to a third person to sue upon it, without indorsing it; and therefore the plaintiff, if he was the lawful holder of the bill, and had authority from the bank to do so, had a perfect right to sue upon it."

This case was directly approved in O'Brien v. Smith, 1 Black, 99, 17 L. Ed. 64, where the suit was brought by the cashier of a bank upon a note belonging to it, but of which he had control for its use. In affirming a recovery against the objection that the plaintiff could not recover in his own name, Chief Justice Taney, speaking for the court, said:

"The authorities referred to by the counsel for the defendant in error are conclusive, and it cannot be necessary to discuss these questions, which we consider as too well settled to be now open to serious controversy."

The case of Boyd v. Corbitt, 37 Mich. 52, is precisely in point. There Boyd, who was a collecting agent for one Martin, received from him a note indorsed in blank, and brought suit thereon in his own name; and it was held that he had sufficient title on which to maintain the suit.

Where, as in Ohio, the Code of Procedure requires that the suit shall be brought by the real party in interest, it is nevertheless held that, when the plaintiff is the lawful holder of the note, it is no defense to the maker to show that the transfer under which the plaintiff holds it is without consideration, or subject to equities between him and his assignor, or colorably, and merely for the purpose of collection, and that it is sufficient if he have the legal title, either by written transfer or delivery, whatever may be the equities of his relation with his assignor. White v. Stanley, 29 Ohio St. 423; Eaton v. Alger, 47 N. Y. 345; Hays v. Hathorn, 74 N. Y. 486; Cottle v. Cole, 20 Iowa, 481.

Reference is also made by counsel for defendant to the fact that a statute of Ohio provides that ordinances shall not go into effect until 10 days after publication thereof is had, and that the ordinance of March 15, 1892, was not published until the 20th of that month, whereas the bonds are dated March 1st, and it is therefore claimed that the ordinance was not operative when the bonds were issued. To this there are several answers. In the first place, there is no evidence when the bonds were negotiated by the village. Secondly. February of that year having 29 days, by excluding the first and including the last days it became operative on the 1st day of March. But, lastly, it is recited in the bond that "all acts, conditions, and things required to be done precedent to and in the issuing of said bonds have been properly done, happened, and performed in regular and due form as required by law." If, as contended, the passage and publication of the ordinance was a condition precedent to the issuing of the bonds, this recital represented that these things had been done. As to the matters expressly required by the statute to be shown upon the face of the bonds, as we have already stated, they are sufficiently disclosed.

We think there is no error shown in the record, and the judgment of the circuit court is accordingly affirmed. . ..