# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

CITY OF DEFIANCE, OHIO, v. SCHMIDT et al. (two cases).

(Circuit Court of Appeals, Sixth Circuit. May 19, 1903.)

Nos. 1,104, 1,159.

1. ERROR—MATTERS REVIEWABLE—ACTION TRIED BY COURT.

Rulings of a Circuit Court in the progress of the trial of an action at law by the court without a jury cannot be reviewed by the appellate court, unless a written stipulation waiving a jury is signed and filed with the clerk in accordance with Rev. St. § 649 [U. S. Comp. St. 1901, p. 525], so as to bring the case within the provisions of section 700 [page 570]; but, in the absence of such stipulation, the only question which can be considered is whether the judgment rendered is sustained by the pleadings.

2. MUNICIPAL BONDS—MISTAKE IN USE OF SEAL—REFORMATION.

Under the statutes of Ohio, which provide that all bonds issued by municipal corporations shall be signed by the mayor and clerk, and be sealed with the seal of the corporation, where bonds issued by a city, under an ordinance containing similar provisions, signed by the mayor and clerk, and attested as bearing the seal of the city, were sealed with the seal of the city clerk, if the same was not in fact the corporate seal of the city a mistake was made by the officers against which an innocent holder of the bonds was entitled to relief in a court of equity by a decree requiring the city to affix the proper seal, or enjoining it from setting up its absence as a defense to an action on the bonds.

3. SAME—VALIDITY—ESTOPPEL BY RECITALS.

Bonds of a city reciting that they were issued "under and pursuant to the laws of the state of Ohio," and of an act specially referred to, will not be held invalid in the hands of a bona fide purchaser because of the unconstitutionality of the special act, where the city had power to issue them under the general statutes of the state; and a further recital therein that "it is hereby specially declared that all proceedings, acts, conditions and things required either by said statutes or ordinances to be had or taken preliminary to the issue hereof have been duly had and taken by said city," estops the city, as against such holder, to deny that all things were done which were essential to their validity under the general statutes as well as under the special act, even to the submission of the question of their issuance to a vote, where that was required by the general statutes, though not in terms by the special act.

123 F.—1

4. SAME.

> Where bonds of a city recited the purpose for which they were issued, which was one for which the city was authorized by law to issue bonds, and also recited the ordinance which provided for their issuance and sale for such purpose. the city is estopped to deny their validity as against a bona fide holder on the ground that they were in fact issued for a different and unlawful purpose.

5. SAME—AUTHORITY OF OFFICERS TO MAKE RECITALS—CONSTRUCTION AND SCOPE OF RECITALS.

> Where it is the duty of the mayor and clerk of a city to sign, seal, and issue bonds provided for by an ordinance, it is also their duty to ascertain and determine whether all statutory requirements essential to their regularity under the law have been complied with, and their recital of such fact in the bonds is binding on the city; the fact that the ordinance referred only to a special legislative act as the authority for their issuance, and directed that the bonds should express on their face that they were issued thereunder, does not limit the effect of general recitals therein by such officers, that all requirements of the laws of the state have been complied with, to the requirements of such special act.

In Error to and Appeal from the Circuit Court of the United States for the Northern District of Ohio.

For opinion below, see 117 Fed. 702.

Two cases are before us—one at law, and the other in equity. Both were heard and decided by the court below, without the intervention of a jury, at the same time and upon substantially the same record. The action at law was brought originally upon the coupons of certain bonds, and later, by supplemental petition, upon the bonds themselves, issued by the city of Defiance, Ohio, in 1889, and held by the plaintiffs below as bona fide purchasers for value. The bonds recited that they were issued for the purpose of borrowing money to build a bridge over the Maumee river, in the said city, and purported to be signed by the mayor and clerk of the city, and to be sealed with its corporate seal.

In its answer the city set up a number of defenses: That the bonds purported to be issued under an act of the General Assembly of Ohio passed February 3, 1887, authorizing the council of the city of Defiance, Ohio, to borrow money for the purpose of building a bridge, which was unconstitutional and void; that the resolutions and ordinances authorizing the issue of the bonds were passed without the question of issuing them having been submitted to the voters of the city, and hence, under the general statutes of Ohio, were unauthorized and void; that the resolution for the sale of the bonds was not advertised according to law; that the recitals in the bonds in suit were not authorized by the ordinance directing their issue, and were therefore of no force and effect as against the city; that the bonds sued on were not sealed with the corporate seal, as required by law, but only with the seal of the city clerk; that there was no certificate by the city clerk that the money required for the contract to build the bridge was. in the city treasury, as required by law; and that the bonds, while ostensibly for municipal bridge purposes, were really issued to aid a railroad, in violation of the Constitution of Ohio.

While the action at law was pending, the plaintiffs below filed a bill in equity, reciting the pendency of the law case, and the defense made of the want of a corporate seal, alleging that they were bona fide holders, that the seal affixed was used for the corporate seal, and praying the court, if a mistake was made, either to reform the bonds or enjoin the defendant from setting up this defense.

To this the defendant answered substantially as in the law suit, and afterwards filed a cross-bill, setting up all the facts, and praying the cancellation of the bonds.

Both cases were by agreement tried before the court below at the same time, a jury being expressly waived in the law case, but not by a written

---

¶ 4. See Municipal Corporations, vol. 36, Cent. Dig. § 1977.

stipulation on file. The court found in favor of the plaintiffs, and rendered judgment in the action at law for the amounts claimed, and a decree in the suit in equity enjoining the city from setting up the defense of a want of a corporate seal in any action upon the bonds or coupons.

William H. Hubbard and Henry B. Harris, for plaintiff in error and appellant.

Alexander C. Ayres and John H. Doyle, for defendants in error and appellees.

Before SEVERENS and RICHARDS, Circuit Judges, and COCHRAN, District Judge.

RICHARDS, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

1. The record in the action at law contains numerous specifications of error, growing out of the admission or rejection of testimony, and based upon the rulings of the court in the progress of the trial. With respect to these, it is sufficient to point out that, although this case was tried and determined by the court without the intervention of a jury, there is nothing in the record to show that a stipulation in writing waiving a jury was filed with the clerk by the parties or their attorneys. This being the case, none of the rulings of the court in the progress of the trial, as presented by the bill of exceptions, can be re-examined and reviewed here. The only inquiry we can make is whether the judgment in favor of the plaintiffs below is sustained by the pleadings. Rev. St. U. S. §§ 649, 700 [U. S. Comp. St. 1901, pp. 525, 570]; Bond v. Dustin, 112 U. S. 604, 5 Sup. Ct. 296, 28 L. Ed. 835; Spalding v. Manasse, 131 U. S. 65, 9 Sup. Ct. 649, 33 L. Ed. 86; Shipman v. Ohio Coal Exchange, 17 C. C. A. 313, 70 Fed. 652.

2. As to the defense of the lack of a corporate seal. The statutes of Ohio provide that municipal corporations shall "have a common seal, and change or alter the same at pleasure" (section 1552); that the mayor "shall be furnished by the council with the corporate seal of the corporation, in the center of which, shall be the words 'Mayor of the City of ———'" (section 1745); and that the council shall cause to be provided for the clerk's office "a seal in the center of which shall be the name of the corporation, and around the margin the words 'City Clerk'" (section 1764).

It appears that the mayor had a seal in the center of which was the device of the seal of the state of Ohio, and around the margin the words "Mayor of the City of Defiance." This seal did not, of course, comply with the requirements of section 1745. The seal upon the bonds was that provided for the city clerk, although it was defective in form, having the words "City of Defiance" in the center, and around the margin the words "City Clerk" and "Ohio," while, according to the form prescribed, the word "Ohio" should have been in the center instead of in the margin.

The statutes of Ohio provide that all bonds issued by municipal corporations shall be signed by the mayor and clerk, and be sealed with the seal of the corporation. The ordinance providing for the issue of these bonds contained a similar provision. Both before and after these bonds were issued the mayor and clerk used the clerk's

seal as the corporate seal in signing and sealing certain municipal bonds. Bonds of five or six different series, all sealed with the clerk's seal and signed by the mayor and clerk, were issued from 1884 to 1893, and were subsequently paid and canceled without any question of their legality. We are satisfied that when the mayor and the clerk placed the clerk's seal on these bonds in the space provided for the corporate seal, and affixed their signatures, attesting that the city of Defiance had thus caused its corporate name and seal to be set by the mayor and clerk, they intended to use the clerk's seal as the corporate seal. If the seal affixed was not the corporate seal, there was a mistake made which a court of equity should correct. The decree of the court below in the equity case was entirely proper under the circumstances. Bernards Tp. v. Stebbins, 109 U. S. 341, 3 Sup. Ct. 252, 27 L. Ed. 956.

3. The bonds sued upon contained, among other things, the following recital:

"This bond is issued under and pursuant to the laws of the state of Ohio, and of an act of the General Assembly of the state of Ohio, passed February 3, A. D. 1887 (Ohio Laws, Vol. 84, page 273), entitled, 'An Act to authorize the council of the city of Defiance, Ohio, to borrow money for the purpose of building a bridge.'"

The act referred to authorized the council of Defiance to issue bonds, not to exceed the sum of fifty thousand dollars, "for the purpose of building over the Maumee river in said city a good and substantial bridge, with the necessary approaches thereto, and having on each side thereof a good and sufficient sidewalk," and, "for the purpose of providing for the payment of the bonds and the interest thereon," to levy a tax in addition to the taxes otherwise authorized by law.

The Constitution of Ohio provides that the General Assembly shall pass no special act conferring corporate powers (article 13, § 1); and that the General Assembly shall provide for the organization of cities and incorporated villages by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit so as to prevent the abuse of such power (article 13, § 6). The general laws of Ohio, in 1889, limited the rate of taxation in cities of the grade and class of the city of Defiance (sections 2682 and 2689a), and, while authorizing the levying of an additional tax (section 2683) and the issuing of bonds (section 2835) for the purpose of constructing bridges, required the question of levying the tax (section 2687) and of issuing the bonds (section 2837) to be submitted to the voters of the corporation; a majority of those voting on the proposition being required to authorize the additional tax levy, and two-thirds of those voting upon the question to authorize the bonds.

In view of these provisions, it is insisted that the act of February 3, 1887, authorizing the issue of the bonds and the levying of the additional tax, without submitting the matter to the electors, was in violation of the provisions of the Constitution quoted, and therefore void.

In reply to this, it is urged that the special act conferred no corporate powers because, under the general statutes, the council had

the power to issue bonds "for constructing bridges and culverts" (section 2835), and to levy an additional tax ."for constructing and maintaining bridges" (section 2683), subject to the condition that the question of issuing the bonds and levying the tax should be submitted to the voters of the corporation; and if, to support the constitutionality of the special act, it was necessary to submit the question to the electors, it is to be presumed the General Assembly intended that the provisions requiring this should be treated as incorporated into the special act, and the powers conferred by the special act be exercised only under and pursuant to the limitations of the general laws.

It is not necessary, however, to pass upon the constitutionality of the special act—a question never raised and submitted to the Supreme Court of Ohio, notwithstanding the fact that the municipal code of Ohio in force when the bonds were issued imposed upon the city solicitor the duty of applying, in the name of the corporation, to a court of competent jurisdiction for an order of injunction to restrain the misapplication of funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances governing the same, or which was procured by fraud or corruption (section 1777); and empowered any taxpayer to make the application if the city solicitor failed to do so upon a request in writing (section 1778), the taxpayer to be allowed the costs, including reasonable compensation to his attorney, if he satisfied the court that he had good cause to believe his allegations were well founded (section 1779).

It is obvious from the evidence that these bonds were not issued to build a bridge for municipal purposes, but to induce a projected railroad to locate its line through the city of Defiance. The citizens wanted the railroad, and were willing to issue the bonds to get it. The method adopted was employed to circumvent the constitutional prohibition against any municipal corporation raising money in aid of any private corporation (article 8, § 6). Fifty thousand dollars of bonds were issued ostensibly for bridge purposes; they were sold to the railroad contractor for a certain sum; a contract was made with him to build the bridge for substantially the amount he bid for the bonds; a city warrant was handed him in advance for the anticipated cost of the bridge (he giving a bond to build it), and this warrant he turned over to the city in payment of the bonds. The conspiracy which carried through this illegal scheme would have been crushed at the start if any taxpayer had deemed it his interest or duty to apply for an injunction. But no one saw fit to interfere, and the bonds were issued and delivered, and put upon the market, and innocent purchasers induced to buy them. The real question now is whether, in view of the recitals they contain, the city of Defiance is not estopped from making the defense it relies upon.

4. Each of the bonds sued on contains the following recitals:

"This bond is issued under and pursuant to the laws of the state of Ohio, and of an act of the General Assembly of the State of Ohio, passed February 3, A. D. 1887 (Ohio Laws, Vol. 84, page 273), entitled, 'An Act to authorize the Council of the City of Defiance, Ohio, to borrow money for the purpose

of building a bridge.' And which act authorized and empowered the said city council to issue bonds not to exceed the sum of fifty thousand dollars, for the purpose of building a bridge over the Maumee river in said city, and which act further provided that 'said bonds shall be of such denominations and bear such rate of interest, not exceeding six per cent., payable semi-annually, and mature at such times, not exceeding twenty-five years, as said council may determine,' and in pursuance of the resolution of said city council of the city of Defiance, Ohio, duly and unanimously passed declaring the necessity of the construction of said bridge, and the ordinance of the said city of Defiance, entitled, 'An ordinance of the city of Defiance, Ohio, to provide for the issue and sale of bonds of said city, for the purpose of building over the Maumee river in said city, a good substantial bridge, with the necessary approaches thereto, and having on each side thereof a good and sufficient sidewalk,' duly and unanimously passed on the 19th day of March, in the year A. D. 1889, by the city council of Defiance, and for the purposes therein set forth; and it is hereby specially declared that all proceedings, acts, conditions, and things required either by said statutes or ordinances to be had or taken preliminary to the issue hereof have been duly had and taken by said city of Defiance and its officers and agents."

It is to be observed that, according to the above statement, upon the faith of which the bonds were bought, they were issued, not only under the alleged unconstitutional special act, but "under and pursuant to the laws of the state of Ohio." This was an assertion of statutory power ample for the purpose expressed. The recital following of the resolution and ordinance imported they were passed in conformity with both the general law and the special act (Risley v. Village of Howell, 12 C. C. A. 218, 64 Fed. 453, 457); and in order to remove all doubt and exclude all examination, not only upon the question of power, but upon that of regularity, the recitals concluded with the broad and explicit declaration: "And it is hereby specifically declared that all proceedings, acts, conditions and things required either by said statutes or ordinances to be had or taken preliminary to the issue hereof have been duly had and taken by said city of Defiance and its officers and agents."

It is well settled that the recital of an unconstitutional act as authority for issuing bonds will not invalidate them in the hands of an innocent holder if power for the issue can be found elsewhere (St. Paul v. Lamprecht Bros., 31 C. C. A. 585, 88 Fed. 450; City of Beatrice v. Edminson, 54 C. C. A. 601, 117 Fed. 427; Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760; Waite v. Santa Cruz, 184 U. S. 304, 22 Sup. Ct. 327, 46 L. Ed. 552); and it is equally well established by these and many other cases that a general recital that all the things required by law to be done have been done, is ample to estop a city from setting up any lack of regularity in issuing the bonds, whether by failure to comply with conditions precedent or otherwise. If an examination of the law shows the power exists, no investigation of the record to ascertain whether the conditions precedent to its exercise have been complied with is required in the face of such a recital.

In view of all this, we think these representations were sufficient to induce a purchaser to believe, if a submission to the voters under the general law was necessary to validate the special act and lawfully exercise powers under it, that such submission was had, or, if the special act was of doubtful constitutionality, that the bonds

were issued in compliance with the provisions of the general law, after the necessary submission to the electors and approval by them. By first submitting the question to the voters, the bonds might have been issued under both the special act and the general law, and the recitals imply this was done. There was nothing on the face of the bonds to put the purchaser upon notice of any illegal purpose in issuing them. The building over the Maumee river, in the city, of "a good substantial bridge, with the necessary approaches thereto, and having on each side thereof a good and sufficient sidewalk," as set forth in the recitals, was a strictly municipal purpose, requiring for its execution no corporate powers not possessed by the city under the general law. Being thus issued for a lawful purpose, the belief of the purchaser that the provisions of the general law, requiring a submission to the voters, had been complied with, must have been confirmed by the concluding declaration that "all proceedings, acts, conditions and things required * * * by said statutes" (meaning not simply the special act, but all the applicable laws of Ohio) had been "duly had and taken by the city of Defiance and its officers and agents." City of Cadillac v. Woonsocket Inst. for Savings, 7 C. C. A. 574, 58 Fed. 935; Ashley v. Board of Supervisors, 8 C. C. A. 455, 60 Fed. 55; Risley v. Village of Howell, 12 C. C. A. 218, 64 Fed. 453; Village of Kent v. Dana, 40 C. C. A. 281, 100 Fed. 56; St. Paul v. Lamprecht Bros., 31 C. C. A. 585, 88 Fed. 450; Clapp v. Village of Marice City, 49 C. C. A. 251, 111 Fed. 103; City of Beatrice v. Edminson, 54 C. C. A. 601, 117 Fed. 427; Fairfield v. School District, 54 C. C. A. 342, 116 Fed. 838; Hackett v. Ottawa, 99 U. S. 86, 25 L. Ed. 363; Ottawa v. National Bank, 105 U. S. 343, 26 L. Ed. 1127; Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760; Waite v. Santa Cruz, 184 U. S. 302, 22 Sup. Ct. 327, 46 L. Ed. 552.

5. But it is urged, because the ordinance recites the special act as authority, and directs that the bonds express upon their face that they were issued by virtue of the special act, that the recitals inserted stating they were issued "under and pursuant to the laws of the State of Ohio," and that all the preliminary steps required "by said statutes" had been taken, were unauthorized and inoperative, as an examination of the ordinance would have shown, and hence cannot be held to estop the city of Defiance. While the ordinance recited the special act, and directed that the bonds express upon their face that they were issued under it, other proper recitals were not forbidden. The declared purpose was to issue bonds to build a municipal bridge. If to do this it was necessary to comply with applicable provisions of the general law, recitals that this had been done were not unauthorized. It was the duty of the mayor to see that the ordinances and resolutions were faithfully enforced (section 1746), and the clerk to keep the records of the city (section 1755), and of both to sign and seal the bonds. To do this it was necessary for them to ascertain and determine whether all the preliminary steps had been taken, and to declare the fact. In view of this implied duty and authority, an examination of the ordinance alone would not have served to negative their statement.

But, if an examination of the ordinance would have shown what is claimed, we do not think, in view of the recitals, that the purchaser was required to make it. He had a right to rely on the truth of the recitals. They were intended to lull him into security and avert investigation. They served their purpose. If the approval of the voters was necessary to the validity of the issue, the purchaser was assured it had been secured. The purpose for which the bonds were issued was lawful, and there was nothing on their face to excite suspicion or induce inquiry. On the contrary, the recitals close with the explicit declaration that every prerequisite had been performed; and these representations were made, over the corporate seal, by the officers and agents of the city, acting under oath and in the discharge of a statutory duty.

An examination of the ordinance in the case of Risley v. Village of Howell, 12 C. C. A. 218, 64 Fed. 453, would have shown that the bonds were not issued for public improvements in conformity with the act recited, but in unlawful aid of a railroad; yet we held that the purchaser had a right to rely upon the recital that the ordinance was in conformity with the act. If a purchaser is not compelled to examine the ordinance to ascertain whether the recitals are true (Hackett v. Ottawa, 99 U. S. 86, 25 L. Ed. 363; Ottawa v. National Bank, 105 U. S. 342, 26 L. Ed. 1127; Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760; Waite v. Santa Cruz, 184 U. S. 302, 22 Sup. Ct. 327, 46 L. Ed. 552), why should he be compelled to examine it to ascertain whether they are authorized? Suppose they are true, but not authorized, are the bonds therefore invalid? Suppose an examination of all the records in this case had shown there was a submission to the voters and everything required by the general law to be done before issuing the bonds had been done, would the bonds be invalid because the council in the ordinance did not specifically direct the mayor and clerk to say so?

6. Several questions are raised relating, not to the power to issue the bonds, but to the regularity of its exercise. Thus it is insisted that there was no certificate, under section 2702, that the money required for the contract to build the bridge was in the city treasury; but we held in Clapp v. Village of Marice City, 49 C. C. A. 251, 111 Fed. 103, that this section has no application to the issue of bonds, and, moreover, if such a certificate had been required, the recital that all the preliminary steps had been complied with would import that it was on file. The latter recital also estops the city from setting up the lack of a proper advertisement of the bonds and a number of other objections of a similar nature.

The decree of the Circuit Court in the equity case and the judgment in the law case must both be affirmed.